166 N.J. Super. 124 (1979)
399 A.2d 300
HELEN ESSEX, PLAINTIFF-APPELLANT,
v.
NEW JERSEY BELL TELEPHONE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1979.
Decided February 15, 1979.
*125 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Richard Galex argued the cause for appellant (Messrs. Heilbrunn, Finkelstein, Heilbrunn, Garruto & Galex, attorneys).
Mr. Stephen L. Abbott argued the cause for respondent (Messrs. Toolan, Romond, Abbott & Domenichetti, attorneys).
PER CURIAM.
Plaintiff Helen Essex appeals from the grant of summary judgment in favor of defendant New Jersey Bell Telephone Company dismissing her complaint. She contends the trial judge erred because the question of defendant's negligence should have been left for jury resolution.
*126 Plaintiff, employed by Merck Company as a legal secretary, was injured on February 7, 1975 when she fell over a telephone wire at the desk of Mrs. Meyers, a coworker. Plaintiff's fall occurred in an aisle formed by the desks of plaintiff and Mrs. Meyers. Sometime in December 1974 over 3,000 telephones were changed at the Merck Company from dial to the touchtone system. The changeover did not require changing any of the telephone wires that were in the floors or walls. However it did entail changing the mounting cord, i.e., the cord which runs from the telephone to the box in the floor or wall. Merck advised the telephone company that it did not want the new telephones permanently affixed to the desks and mobile phones were installed. The one in question had a standard length mounting cord of approximately five feet six inches and, when the telephone was at certain locations on the desk, a portion of the cord lay on the floor.
Evidence disclosed that although adhesive ties or clips, used to adhere wires or cables to the surface or sides of desks, were available, they were not used in connection with the installation of the telephone at Mrs. Meyers' desk. Moreover, although safety panels through which cords could be passed were present on some of the desks, there was no such panel available on the desk of Mrs. Meyers.
As part of her response to defendant's motion for summary judgment, plaintiff presented the report of a physical engineer who concluded that it was foreseeable that someone would trip and fall over the cord as installed, and the cord from the telephone "should not have been in the aisle and should have been reasonably short so as to facilitate minor office movement but not so long that it contributed to the hazard of tripping." This expert pointed out that it was a safety "practice of engineers to have most everything anchored, tied or fastened down" and that
These practices have been highly developed and used by Bell Telephone as they have specially designed staple guns, connectors, clips, *127 adhesive mounts, aisle covers, wire clamps, anchors, junction boxes, quick disconnects and many other devices. They also route wires through partitions or over walls as appropriate to avoid the hazards of aisle obstructions.
The trial judge, in ruling on defendant's motion for summary judgment, held there was no duty on the telephone company to eliminate the tripping hazard caused by the wire and said:
They installed the phone. No specific request was made by the employer or subscriber to put clips on or what other means suggested by Mr. Galex. It was a proper installation and it was a mobile installation. And when it's mobile, it's very likely that the wire while it's being moved will become loose enough where somebody may trip over it. That's not the responsibility of the telephone company. Your motion is granted.
Defendant argues in support of the summary judgment that in the absence of some contractual arrangement with the subscriber there is no duty on the part of a telephone company to affix a telephone cord to a desk upon which a subscriber has placed a telephone or to take any other precautions to eliminate the tripping hazard presented by the cord falling to the floor.
Defendant's argument, if accepted, would in effect establish a zone within which it would be immune from liability for the foreseeable results of its activity. We decline to do so.
"The existence of a duty is a question of law." McKinley v. Slenderella Systems of Camden, N.J., Inc., 63 N.J. Super. 571, 581 (App. Div. 1960). It has been defined as follows:
"Duty" is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially "a matter of risk * * * that is to say, of recognizable danger of injury." [Wytupeck v. Camden, 25 N.J. 450, 462 (1957)] *128 Whether or not a duty exists is ultimately a question of fairness and "[t]he inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Goldberg v. Newark Housing Auth., 38 N.J. 578, 583 (1962).
In the performance of the weighing function we find it significant, as plaintiff's expert has pointed out, that defendant utility has developed both safety practices and special tools, devices and equipment to prevent the creation of the very type of hazard here involved. The subscriber would normally be uninformed of the appropriate safety practices and ill-equipped to prevent their occurrence. We consider it only fair that the duty to exercise a standard of conduct commensurate with the reasonably foreseeable hazard should be imposed upon the utility with the expertise, ability and equipment to eliminate or reduce the risk of foreseeable harm.
While defendant's activity had its basis in a contract existing between Merck and defendant, negligent performance of such an undertaking may give rise to a cause of action by third persons, such as plaintiff. Bacak v. Hogya, 4 N.J. 417, 422 (1950); Abel Holding Co., Inc. v. American Dist. Tel., 147 N.J. Super. 263, 271-272 (App. Div. 1977); Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370 (Law Div. 1972); Restatement, Torts 2d, § 324A (1965).
Defendant argues it could not reasonably foresee that the mounting cord here would create a possible tripping hazard at this or any other location unless it maintained a constant watch over the wire after its installation. The immediate answer to this contention is apparent from an examination of the report of plaintiff's expert, who expressed the opinion that the nature of the installation without clips or other protective devices made the tripping hazard foreseeable. This created a factual dispute requiring resolution by a jury.
*129 Nor are we persuaded by defendant's further argument that the imposition of a duty here will "burden it with an unworkable standard of care" when it has no "reasonable means to monitor its installation." Plaintiff's asserted cause of action has its basis in the nature of the installation made, not in events occurring after defendant left the scene. To the extent that Shafer v. Mountain States Tel. & Tel. Co., 335 F.2d 932 (9 Cir.1964), and Cooper v. Southwestern Bell Tel. Co., 159 Kan. 67, 151 P.2d 692 (Sup. Ct. 1944), may be read to hold that under similar circumstances the telephone company owes no duty to the employee of a subscriber with respect to the location, length, nature of installation or resting place of the telephone mounting cord, we decline to follow them.
We hold that defendant did owe a duty to plaintiff to exercise reasonable care in the installation of the telephones on the premises of Merck in order to avoid damage or injury to all within the zone of hazard created by its activity. Whether it properly performed that duty is for resolution by a jury under the circumstances of this case.
Reversed and remanded.