**Daniel M. REPOLA and D.R. Firewood, a sole proprietorship, Irene Stevens Repola, his wife, Appellees,**

v.

**MORBARK INDUSTRIES, INC., a corporation of the State of Michigan and Morbark Pennsylvania, Inc., a corporation of the State of Pennsylvania, Appellants.**

No. 90–5244.

United States Court of Appeals, Third Circuit.

Argued Sept. 26, 1990.

Decided May 30, 1991.

Rehearing and Rehearing In Banc Denied July 5, 1991.

Paul E. Graham (argued), Elizabeth J. Sher, Raymond N. Torres, Jr., Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for appellee.

Linda A. Palazzolo (argued), Jerome M. Lynes, Stephen D. Kinnard, Connell, Foley & Geiser, Roseland, N.J., for appellants.

Before SLOVITER, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by defendant Morbark Pennsylvania, Inc. from a large judgment entered on a jury verdict in favor of plaintiff Daniel M. Repola, who was injured when his left leg was drawn into a wood-chipping machine sold by Morbark Pennsylvania to a company owned by Repola. We are called upon to predict how New Jersey would decide a number of issues arising under the 1987 New Jersey Product Liability Act (NJPLA), N.J.Stat.Ann. § 2A:58C–1 *et seq.* (West 1987), the most important of which is whether the NJPLA subsumes claims for common law negligence based upon the breach of a duty to provide oral

warning undertaken by the distributor of an allegedly defective machine.

The jury based its award on a finding that Morbark Pennsylvania was negligent at common law in failing to live up to its dealership agreement with Morbark Industries, Inc., the manufacturer, which required it to instruct Repola on the safe and proper operation of the powerful woodchipping machine and, in particular, in failing to warn Repola of the danger of leaving the cab of the machine without disengaging the infeed rollers. The jury also found that Morbark Pennsylvania's negligence was the proximate cause of Repola's injuries. With respect to a parallel failure to warn claim under the NJPLA, however, the jury found that although the woodchipper was defective for lacking adequate warnings, this defect was *not* the proximate cause of the accident.

We conclude that the NJPLA does subsume common law negligence claims and, hence, that the district court erred in submitting the negligence claim to the jury. Because this error made possible, and indeed resulted in, inconsistent and utterly irreconcilable verdicts, we will reverse and remand for a new trial.

## I. FACTS AND PROCEDURAL HISTORY [1]

Prior to his injury, Repola was the sole proprietor of a land clearing business, D.R. Firewood. The business utilized, and Repola himself operated, various relatively small, hand-fed woodchipping machines. Believing that his growing business required a larger woodchipper, Repola contacted Walter Deacon, a sales representative for Morbark Industries, Inc., a Michigan manufacturer, to discuss the purchase of a Super Beever Total Chipharvestor ("Super Beever")—a machine designed to reduce whole trees to woodchips. Unlike the smaller woodchippers that Repola had operated, the Super Beever is not designed to be hand-fed. Instead, an operator sitting in a cab controls a hydraulic grapple arm that picks up trees, placing them within a configuration of three rotating cylin-

ders. These three "infeed rollers," which can be started and stopped from a lever within the cab, compress the branches and draw the wood toward a large, spinning chipper disk. Blades on the chipper disk cut the wood.

Several weeks after their initial conversation, Repola placed a verbal purchase order with Deacon, who arranged the sale to D.R. Firewood through Morbark Pennsylvania, Inc., a separately incorporated dealer of Morbark Industries products. Because Repola had never operated a woodchipper as large and as powerful as the Super Beever, Deacon orally represented, and the written purchase order confirmed, that a service representative would be sent to provide oral start-up instructions when the machine was delivered.

Repola received the Super Beever on December 31, 1986. However, no Morbark representative appeared to conduct a start-up demonstration. Repola was left to unload and begin operating the Super Beever guided only by the warning decals attached to the machine and the written instructions provided in the operator's manual. It is undisputed that neither the decals nor the manual explicitly warned operators never to leave the cab when the infeed rollers were engaged.

A few days after Repola began operating the Super Beever, the machine developed hydraulic leaks. Repola contacted Deacon, who by this time had become President of Morbark Pennsylvania. Deacon promised to send someone to make repairs and to conduct the delayed start-up demonstration. On January 9, Victor Howell, an experienced service representative and employee of Morbark Industries, arrived at Repola's worksite. The parties agree that Howell examined the machine, talked with Repola and his crew, left to secure replacement parts, and then returned and repaired the leaks. The parties disagree, however, over whether, in addition, Howell provided Repola with oral start-up instructions for the machine. Howell claims that he provided a complete start-up demonstration, in-

1. Unless otherwise indicated, the recited facts are not in dispute.

cluding specific warnings not to leave the cab prior to disengaging the infeed rollers and not to hand-feed the machine. Repola denies all such communications. Howell does admit that he neglected to fill-out a "Start-up and Procedure Checklist," contrary to Morbark Industries' customary practice.

Repola used the Super Beever without incident until January 31, 1987. On that day, according to Repola's version of the events, he exited the cab while the infeed rollers were operating in order to provide instructions to his employees. As he turned to reenter the cab, Repola's left foot was grabbed by the rotating infeed rollers which dragged him towards the machine. The blades on the chipper disk cut away Repola's left knee and much of the surrounding bone and muscle before one of his employees reached the cab and disengaged the infeed rollers. The injury has necessitated four operations and extensive therapy and rehabilitation.

In November of 1987, Repola, his wife Irene, and D.R. Firewood filed the present action claiming that the Super Beever was defective in its design and in its failure to provide adequate warnings and that, under the NJPLA, Morbark Industries and Morbark Pennsylvania were liable for the injuries proximately resulting from these defects.[2] Well into discovery, Repola became

aware of a Dealership Agreement between Morbark Industries and Morbark Pennsylvania, effective October 1, 1986, obliging the latter to

[n]ot deliver any Morbark Product until it has been properly set up and adjusted; until the Dealer has inspected a copy of the operator's manual which is to be furnished to the purchaser; and until the purchaser, or anyone he designates, has been instructed as to the safe and proper operation of the Morbark Product.

Alleging that he was a third party beneficiary of this agreement, Repola amended his complaint to add a common law negligence claim against Morbark Pennsylvania for failing to provide him with oral start-up instructions.[3]

The case proceeded to a jury trial. On the first day of the trial, in a somewhat confusing exchange between counsel and the court, Morbark Pennsylvania's counsel made a request, which can only be described as a motion *in limine*, to dismiss the separate negligence cause of action, arguing that the statutory claim available under the NJPLA was the sole basis for relief available under New Jersey law.[4] The district court reserved decision on the motion and, on our reading of the record, never decided it *in terms*. At the close of Repola's case, Morbark Pennsylvania moved for a directed verdict but failed to

---

**2.** Plaintiffs originally filed suit in the Superior Court of New Jersey. Defendants removed the case to the district court for the District of New Jersey, 28 U.S.C. § 1441(a), asserting jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332(a)(1). The district court involuntarily dismissed plaintiffs Irene Repola and D.R. Firewood at the time of trial. They are not parties to this appeal.

**3.** Consistent with § 324A of the Restatement (Second) of Torts, New Jersey law permits an individual who is not a party to a contract, but who is within the zone of hazard created by the contract's activity, to maintain a cause of action against a contracting party for negligent performance of its contractual responsibilities. *See Essex v. New Jersey Bell Telephone Co.*, 166 N.J. Super. 124, 129, 399 A.2d 300, 302 (App.Div. 1979). Although, in our view, the language of the agreement is not unambiguous, Morbark Pennsylvania appears to have conceded in the district court that the agreement obligated it to provide oral start-up instructions to purchasers.

**4.** The exchange proceeded as follows:

Morbark: Judge, pursuant to the statute, the claims for negligence and implied warranty as set forth in the complaint must fail because the only thing the product liability statute gives a claim for is strict liability in tort and express warranty.

Repola: Your Honor, that is—we took those out of the pretrial order in terms of the legal issues, except for an independent claim on behalf of D.R. Firewood/Dan Repola with reference to Morbark Pennsylvania.

Court: We have no problems here.

Repola: Okay.

Court: Next? When I say we have no problems, your point is well taken, Miss Palazzolo [counsel for Morbark], with the caveat we still leave in abeyance the status of the D.R. Firewood claim. You follow me?

Morbark: Yes, Judge.

renew its objection to the negligence claim. Ultimately, the court submitted the case to the jury with a verdict sheet containing special interrogatories tracking the separate statutory product liability and common law negligence claims. Once again, Morbark Pennsylvania failed to object, either to the charge or to the form of the special interrogatories.

The statutory products liability portion of the verdict sheet directed the jury to decide whether the Super Beever contained a design defect; the jury found that it did not. The statutory portion of the sheet also directed the jury to consider whether the Super Beever was defective for failure to contain adequate written warnings or instructions; the jury found that it was, but that this defect was not a proximate cause of Repola's injuries. In response to the verdict sheet's interrogatories on common law negligence, however, the jury found that Morbark Pennsylvania negligently had failed to provide oral start-up instructions and that this failure was a proximate cause of Repola's injuries. The jury awarded Repola $747,279.10 for medical bills, lost wages, and pain and suffering. The district court reduced this award to $523,095.37 to reflect the jury's finding that Repola was 30% contributorily negligent.[5]

Morbark Pennsylvania filed a post-trial motion for judgment notwithstanding the verdict (j.n.o.v.) pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59. Morbark Pennsylvania asserted that the NJPLA subsumes common law claims of negligent failure to warn, whether written or oral, and that the jury therefore should not have been instructed on the separate negligence claim. The district court denied the motion for j.n.o.v. on grounds that Morbark Pennsylvania had failed to advance this argument when it moved for a directed verdict, *see Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 814 (3d Cir. 1984), *cert. denied*, 477 U.S. 908, 106 S.Ct.

3284, 91 L.Ed.2d 572 (1986). Because Morbark Pennsylvania had failed to object to the jury instructions, as required by Fed.R. Civ.P. 51, the district court also denied the motion for a new trial. Despite its conclusion that Morbark Pennsylvania had waived its right to request a j.n.o.v. or a new trial, the district court went on to consider and reject on the merits Morbark Pennsylvania's subsumption argument. The district court stated that, although the NJPLA subsumes all claims that a *product* is defective, it does not subsume claims that a *service* associated with the product, such as providing oral start-up instructions, was negligently performed.

Morbark Pennsylvania appeals from the denial of its motions for j.n.o.v. or a new trial as well as from the final judgment entered on the jury's verdict, again arguing that the negligent failure to instruct claim was subsumed by the NJPLA claim and thus should not have been submitted to the jury. Additionally, pointing out that the jury's responses to the separate statutory and common law interrogatories are inconsistent, Morbark Pennsylvania contends that (1) the verdict should be "modified" to eliminate the improperly submitted negligence claim; and (2) judgment should be entered in its favor based on the jury's finding, with respect to the NJPLA claim, that the failure to provide warning was not the proximate cause of Repola's injuries. Alternatively, Morbark Pennsylvania argues, the verdict simply should be reversed and the case remanded for a new trial.

Repola, needless to say, disagrees, contending that the NJPLA does not subsume oral failure to warn claims. He therefore argues that (1) the district court properly instructed the jury on the two separate claims; (2) the resulting verdict was not inconsistent, and (3) the negligence verdict against Morbark Pennsylvania should be affirmed. Even if the NJPLA does subsume the separate negligence claim, Repola adds, submission of the negligence charge

---

**5.** In finding Repola contributorily negligent, the jury may have been influenced by his statements at trial that he usually put the infeed rollers in neutral before leaving the cab and that, as a matter of common sense, he knew that it was dangerous to approach the infeed rollers while they were rotating.

was harmless error because the verdict is still not inconsistent. He stresses that the jury found both that the product was defective and that Morbark Pennsylvania was negligent *and* it found proximate cause under the negligence theory. The jury's failure to find proximate cause under the NJPLA claim, Repola asserts, reflects, at most, the jury's minor confusion regarding proximate causation. Specifically, he argues, the jury probably believed that there could be only one proximate cause for an injury. According to Repola, this minor confusion does not justify upending the entire verdict, and thus we should assume that the jury would have rendered the same verdict in his favor had it been properly instructed only on the NJPLA claim.

## II. WAIVER

Before proceeding to the merits of the dispute, we must consider briefly whether Morbark Pennsylvania has sufficiently preserved the subsumption argument that it presses on appeal. As noted, Morbark Pennsylvania requests, as it did in its posttrial motion before the district court, either that we grant a j.n.o.v., "modifying" the judgment in its favor by deleting the jury's verdict on the negligence claim, or that we reverse the judgment altogether and remand for a new trial. In denying this post-trial motion, the district court ruled that Morbark Pennsylvania, by failing to raise the subsumption argument when it moved for a directed verdict and by failing to object to the proposed or actual jury charge, had waived its rights to such relief under Fed.R.Civ.P. 50 and 51. If the district court was correct, of course, the subsumption argument also is waived for appellate purposes. Morbark Pennsylvania argues, however, that the district court's waiver determination was erroneous. Morbark Pennsylvania points to its motion *in limine, see supra* note 4, and submits that, notwithstanding its failure to raise the subsumption argument later on, this motion sufficiently preserved the issue for appeal.

■ Repola challenges Morbark Pennsylvania's reliance on this motion *in limine* on two separate grounds. First, Repola contends, consistent with the holding of the district court, that an argument advanced in support of a motion *in limine*, but not readvanced during a motion for directed verdict or in opposition to the jury charge, is insufficient under Rules 50 and 51 to form the basis of a request for a j.n.o.v. or a new trial. With respect, we believe that the district court's and Repola's analysis does not adequately address the relevant question as applied to the facts of this case. Indisputably, if an argument is raised in support of a motion *in limine*, the motion is *denied*, and the argument is not restated at the appropriate time, the argument is not preserved under Rules 50 or 51. We think that it is an altogether different matter, however, when an argument is raised in support of a motion *in limine*, but the court *reserves* disposition of the motion and never decides it. In such an unusual circumstance, counsel reasonably may conclude that the court has the motion under continuous advisement and that it need not be restated. The motion is ambulatory, as it were, like a will. Based on our reading of the relevant exchange between counsel and the district court, we are satisfied that Morbark Pennsylvania's counsel acted reasonably in believing that the district court had reserved decision on the issue, rendering further objections unnecessary. Indeed, at oral argument, Repola altered his position on this issue and conceded that Morbark Pennsylvania would not be precluded from seeking a new trial, provided the court is not persuaded by his second attack on Morbark Pennsylvania's motion *in limine*, to which we now turn.

■ Repola contends that a close examination of the record reveals that Morbark Pennsylvania's motion *in limine* never actually raised the subsumption argument in relation to the negligent failure to warn claim upon which the jury ultimately found Morbark Pennsylvania to be liable. According to Repola, to the extent that the motion *in limine* raised the subsumption argument, it was directed towards several other negligence claims that he dropped before trial—*not* the negligent failure to warn claim. Repola contends that the only

objection that Morbark Pennsylvania ever lodged against the negligent failure to warn claim was based on a statute of limitations argument, and was rejected by the court somewhat later during the exchange concerning pretrial motions.

We agree with Repola that the record does reflect some concern on the part of Morbark Pennsylvania with the other negligence claims and the statute of limitations issue. We think, however, that Repola's reading of the record is unduly restrictive. A close reading of the relevant *in limine* exchange supports this conclusion.

Morbark Pennsylvania objected to "the claims for negligence and implied warranty as set forth in the complaint ... because the only thing the product liability statute gives a claim for is strict liability in tort and express warranty." In our view, this was a reasonably articulate explication of the subsumption argument that Morbark Pennsylvania advances on appeal. The objection appears to have been addressed, moreover, to all of Repola's nonstatutory claims, including the claim based on negligent failure to warn. Indeed, Repola's counsel must have believed as much when he responded that "we took those out of the pretrial order ... except for an independent claim on behalf of D.R. Firewood/Dan Repola with reference to Morbark Pennsylvania"—a clear reference to the negligent failure to warn claim. It follows that the court's response, "[w]e have no problems here ... with the caveat we still leave in abeyance the status of the D.R. Firewood claim," effectively reserved decision on Morbark Pennsylvania's objection, on subsumption grounds, to the court permitting Repola to proceed on the negligent failure to warn claim.

Repola contends that, in reserving decision on the status of the negligent failure to warn claim, the court and counsel actually had in mind the statute of limitations issue later addressed. Repola may be correct. We discern nothing either in this exchange or the record as a whole, however, to compel this inference. Thus, we must give Morbark Pennsylvania the benefit of a fair reading of the record and the natural inferences drawn therefrom.

In sum, we conclude that Morbark Pennsylvania's motion *in limine* adequately addressed the statutory subsumption argument and negligent failure to warn claim that are the focus of this appeal. We further conclude that, under these unusual circumstances—i.e., the district court's express reservation of the subsumption argument and its failure to decide the issue during trial—Morbark Pennsylvania was not required to raise the issue again in its motion for a directed verdict, or in response to the court's proposed jury instructions, in order to preserve its right to move for a j.n.o.v. or a new trial under Fed.R.Civ.P. 50 and 51.[6]

## III.  DISCUSSION

A.  *Does Morbark Pennsylvania's Alleged Failure to Provide Oral Start-up Instructions Constitute a Product Defect for Failure to Warn under the NJPLA?*

■ We are not aware of any New Jersey cases touching directly on the question whether a failure to provide oral start-up instructions constitutes a *product* defect under the NJPLA or, in contrast, a separate *service* not subject to the statute. Sitting pursuant to our diversity jurisdiction, we therefore must predict how the New Jersey Supreme Court would rule if presented with this case. *See Adams v. Madison Realty & Development, Inc.,* 853 F.2d 163, 168 (3d Cir.1988). Our analysis begins, as always, with the structure and language of the statute itself.

The central section of the NJPLA states:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that *the product causing the harm was not reasonably*

---

6. Even if the motion *in limine* was insufficient to preserve Morbark Pennsylvania's subsumption argument, in view of the close similarity between the facts at bar and those in *Bereda v.* *Pickering Creek Industrial Park, Inc.,* 865 F.2d 49, 53 (3d Cir.1989), we would be inclined to review the district court's charge, in any event, under a plain error standard.

*fit, suitable, or safe for its intended purpose because it:* a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. *failed to contain adequate warnings or instructions,* or c. was designed in a defective manner.

NJPLA § 2A:58C–2 (emphasis added).

Repola argues that this general language encompasses written warnings (e.g., manuals and decals) but not verbal warnings and instructions. The former, Repola argues, are part of the product; thus, if they are lacking or inadequate, the product may be deemed defective under the statute. The latter, he argues, constitute a separate service or activity apart from the product, the conduct of which must be measured by reference to common law negligence principles.[7]

In advancing this argument, Repola cites several New Jersey precedents for the proposition that, whereas the condition of a product is assessed according to strict liability principles, the conduct of a manufacturer or seller of a product is measured in accordance with negligence principles. *See Brown v. United States Stove Co.,* 98 N.J. 155, 168, 484 A.2d 1234, 1241 (1984); *Feldman v. Lederle Laboratories,* 97 N.J. 429, 450, 479 A.2d 374, 385 (1984). That Morbark Pennsylvania both sold the product and contracted to provide start-up instructions does not alter this distinction, Repola adds, because, as the district court noted, "a seller of products is subject to liability for negligence, as well as strict products liability, if services are performed in connection with the sale of a product." *Repola v. Morbark Industries, Inc.,* No. 88–757, slip op. at 20 (D.N.J. Feb. 20, 1990) (citing *Newmark v. Gimbel's Inc.,* 54 N.J. 585, 592–93, 258 A.2d 697, 700–01 (1969) (suggesting that a beauty parlor, which both sold and applied a permanent wave solution that injured plaintiff, could be liable both under strict liability principles for the defective product and for negligence for its improper application)).

In addressing Repola's argument, we look to NJPLA § 2A:58C–4, which fleshes out the general reference to a "fail[ure] to contain adequate warnings or instructions" in § 2A:58C–2. Specifically, § 2A:58C–4 states:

In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction or, in the case of dangers a manufacturer or seller discovers or reasonably should discover after the product leaves its control, if the manufacturer or seller provides an adequate warning or instruction. An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used....

NJPLA § 2A:58C–4.

Contrary to Repola's assertion, we discern nothing in the text of § 2A:58C–4 to suggest a distinction between written and oral means of conveying warnings and instructions. Broadly speaking, § 2A:58C–4 is intended to reduce injuries to consumers by encouraging manufacturers and dealers to disseminate a reasonable amount of safety information about their product. To that end, § 2A:58C–4 states that an ade-

---

7. Repola makes this argument most concisely in the following passage from his brief:

[T]he jury found that it was the negligence of Morbark Pennsylvania in performing the start-up instructions which it was contractually obligated to perform, and not any defect in the product itself, which resulted in Repola's injuries. Once one recognizes the indisputable fact that the negligent conduct of Morbark Pennsylvania and not any defect associated with the Super Beever constituted the proximate cause of Repola's injuries, the conclusion is inevitable that New Jersey's Product Liability Act, which applies only to "harm caused by the product," does not bar the jury's verdict.

Appellee's Br. at 22–23.

quate warning "is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product." In other words, as Judge Dreier has observed in his leading treatise on New Jersey products liability law, the NJPLA adopts an "objective negligence ... standard in defining an adequate warning." *See* W. Dreier, H. Goldman, & D. Farer, *Products Liability and Toxic Tort Law in New Jersey: A Practitioner's Guide* appendix E at 18 (6th ed. 1988) (hereinafter *"Products Liability"*). The statute, however, does not facially mandate that this communication be accomplished by a particular means. Rather, the NJPLA appears to permit manufacturers and dealers to convey reasonable warnings or instructions by the most efficient and effective means available, whether written, oral, or some combination of the two.

Moreover, we see no compelling reason in logic or policy to read a distinction between written and verbal warnings into the NJPLA. In a functional sense, neither written nor oral warnings actually are part of the product itself. Written warnings are no more capable of reducing trees to woodchips, for example, than are oral warnings. Rather, warnings, whether written or oral, are intended to convey information about the safe and proper use of the product. Contrary to Repola's assertions, we therefore see nothing in the nature of written warnings that renders them inherently more "product-like" or less "ser-vice-like" than oral warnings. In our view, such attempted distinctions are meaningless in this context.

Indeed, a statutory scheme that distinguished between written and verbal warnings might well prove illogical and inefficient. Such a statutory distinction effectively would require manufacturers and sellers to provide all warnings and instructions in written form or to face liability.[8] We do not doubt that it is within the power of the New Jersey legislature to enact such a requirement. We believe, however, that the drafters of the NJPLA would have stated it plainly if this was their intent, particularly since New Jersey case law prior to the NJPLA had implicitly recognized that written warnings alone may be inadequate or impractical and that manufacturers could satisfy their duty to warn by providing oral warnings to consumers. *See Torsiello v. Whitehall Laboratories,* 165 N.J.Super. 311, 324–26, 398 A.2d 132, 139 (App.Div.), *certif. denied,* 81 N.J. 50, 404 A.2d 1150 (1979) (citing with approval *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121, 131 (9th Cir.1968)).

The NJPLA was not intended to codify the entire New Jersey common law of products liability, but only to clarify certain of its aspects. *See* NJPLA § 2A:58C–1(a). Absent some affirmative rejection of *Torsiello* in the language of the NJPLA, we see no reason why, under the statute, oral warnings should not continue to be considered a reasonable supplement to written product warnings. We thus reject Repola's

---

**8.** Consider, for example, a hypothetical fact pattern roughly the converse of that at issue in the current dispute. A manufacturer builds a complicated and expensive machine that cannot safely be operated until the buyer has been extensively instructed in its use and warned of its dangers. The manufacturer attaches a variety of labels to the machine and provides various written instruction and safety manuals to buyers. The manufacturer has learned from experience, however, that written materials cannot fully provide the necessary instruction or warning. An oral, face-to-face start-up demonstration of the operation of the machine, with an opportunity for questioning and hands-on demonstration, has been shown to be the only effective means of avoiding injury to purchasers. An extensive oral start-up demonstration is provid-ed to a particular buyer who nonetheless is injured by the machine some time later. The buyer brings a failure to warn suit under the NJPLA against the manufacturer who defends by claiming that a reasonable amount of warning, written and verbal, was provided. The buyer responds that the NJPLA does not countenance verbal warnings and thus that they are legally irrelevant in determining whether the manufacturer provided reasonable warning. Because the written warnings were insufficient to constitute reasonable warning in and of themselves, the buyer asserts, the manufacturer is liable. Under a statutory scheme that in substance required all product instructions and warnings to be in written form, the buyer would prevail.

**492**

interpretation of the statute and conclude that the NJPLA encompasses both oral and written failure to warn claims.

**B.** *Does the NJPLA Subsume Failure to Warn Claims Based on Common Law Negligence?*

■ The foregoing conclusion obviously does not end our inquiry. We must consider whether, notwithstanding that it encompasses both written and oral failure to warn claims, the NJPLA nonetheless permits a product liability plaintiff to bring a separate, additional common law negligence claim if he or she so chooses. In addressing this issue, we return again to the language of § 2A:58C–2.

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable, or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

NJPLA § 2A:58C–2. A straightforward reading of this statutory language does not appear to dispose of the issue, but our task is aided by the NJPLA's definitional sections. Section 2A:58C–2 references two defined terms crucial to the scope of the NJPLA—"product liability action" and "harm." A "product liability action" is defined as

> any claim or action brought by a claimant for harm caused by a product, *irrespective of the theory underlying the claim,* except actions for harm caused by breach of an express warranty.

NJPLA § 2A:58C–1(b)(3) (Emphasis added). "Harm" is defined as:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consor-

tium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

NJPLA § 2A:58C–1(b)(2).

When read in light of these definitions, it becomes clear that § 2A:58C–2, which imposes liability on a manufacturer or seller "only if a claimant proves" the elements of the statutory action, and which brings within the statute all claims for damage or injury caused by a product (excluding those caused by breach of express warranty) "irrespective of the theory underlying the claim," effectively creates an exclusive statutory cause of action for claims falling within its purview. Judge Dreier has stated the point forcefully:

> Section 2 ... provides that this newly-defined statutory product liability action is the sole basis for recovery on a product claim subject to its terms, since the manufacturer and seller are liable only if the claimant proves his or her case in accordance with the elements set out in section 2.

Dreier, *Analysis: 1987 Products Liability Act,* 41 Rutgers L.Rev. 1279, 1292 (1989). *See also Products Liability,* at 62 (making same point). We agree with Judge Dreier's interpretation and predict that the New Jersey Supreme Court would hold that the NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product.

**C.** *Does the NJPLA Subsume Common Law Failure to Warn Claims Even if the Defendant's Obligation to Warn Arose Out of a Separate Contractual Agreement?*

■ Repola argues that, even if we hold that the NJPLA generally subsumes common law products liability claims, including negligent failure to warn claims, the statute should not be construed to subsume such claims when the obligation to provide warning arises not only out of the statute but also out of a separate contract, such as the dealership agreement between Morbark Industries and Morbark Pennsylvania. We

disagree, at least as applied to the facts of this case. As discussed previously, the NJPLA requires manufacturers and sellers to provide purchasers with "adequate warning or instruction," defined as:

> [That warning] that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used. . . .

NJPLA § 2A:58C–4.

We find it difficult to imagine that a contractual obligation to warn would add much to this statutory duty. Certainly the dealership agreement at issue here—which required only that Morbark Pennsylvania not deliver the product "until the purchaser . . . has been instructed as to the safe and proper operation of the Morbark Product" —required no more of Morbark Pennsylvania than does § 2A:58C–4. As a general matter, and certainly on these facts, we therefore see no reason why the existence of a separate contractual duty to warn necessitates permitting an injured consumer to bring a separate common law negligence claim based on the contract. Permitting such a separate claim would contravene the NJPLA's intent to provide a single statutory products liability claim, and would increase the potential for jury confusion and inconsistent verdicts, without adding materially to an injured consumer's ability to obtain compensation.[9]

This is not to say that a products liability plaintiff may never bring a separate negligent failure to warn claim based on a contractual obligation to warn. We do not decide, because the issue is not before us, whether such a claim could be brought when the contractual obligation to warn is materially more rigorous than the duty imposed by statute or when a person other than the manufacturer or seller of the product assumes a duty to warn. In this case, the general obligation to provide safety instructions assumed by Morbark Pennsylvania under the dealership agreement is no greater than the duty to warn already required of it as a seller of the product under the NJPLA.[10] The separate common

---

**9.** In generally refusing to permit a separate common law claim based on the contract, we are not deciding whether the existence of the contract and the obligations it imposes may nonetheless be put before the jury under the "flag" of the NJPLA claim. A plaintiff may seek to admit the contract to show that this is the kind of product that did require a particular warning so that the jury could determine whether the failure to provide the oral explanations played a role on the causation issue, or on the issue of punitive damages, where scienter or foreseeability would be material, or if there were a claim for contribution or indemnity as between the manufacturer and an independent seller which had entered into the service agreement. This issue will have to be decided by the district court in the first instance if it is raised in that court at the retrial.

**10.** The dissent argues that Morbark Pennsylvania's contractual obligation to instruct "as to the safe and proper operation of the Morbark product" requires more than a simple warning, i.e. a complete "start-up demonstration." The dissent then infuses into that rendition of the contractual language the five items required to be checked off by the service representative in a "warranty validation report." *See* dissent typescript at 495–96. With all respect, the dissent reads too much into the language of the contract. But even if the dissent's liberal reading of the contract is accurate, our result is unchanged. The essential claim in this case is that the defendants failed to warn Repola not to exit the cab while the infeed rollers were engaged. That obligation could have been satisfied by imparting to Repola a clear warning—whether written, oral, or for that matter by demonstration or hand signals—at the time of sale, during the start-up demonstration, or any other time before his injury. The point is that the means of conveyance are irrelevant so long as the appropriate message ultimately is imparted. Thus, to the extent that any part of the contractually-mandated start-up demonstration was intended to or had the effect of conveying safety warnings, it is within the scope of activity contemplated by the NJPLA's duty to warn. To suggest otherwise—i.e., that a contractual obligation to instruct as to safe and proper operation is more expansive than the obligations under the NJPLA—reads too little into that statute, which is reflective of a broad and remedial policy designed to protect consumers against defective products. To the extent that the start-up demonstration incorporated functions other than safety warnings, such as parts and maintenance instruction, these are admittedly outside the scope of the NJPLA. They are also com-

law negligent failure to warn claim therefore should not have been submitted to the jury; rather, all of Repola's claims should have been submitted under the aegis of the NJPLA.

### D. *The Inconsistent Verdict Question*

■ We perhaps could overlook the submission of the negligence claim as harmless error had the jury determined that *both* the statutory and the negligent failures to warn proximately caused Repola's injuries. Because the NJPLA claim completely subsumes the negligence claim, however, the jury's finding that Morbark Pennsylvania's failure to provide adequate warning under the NJPLA was not the proximate cause of Repola's injury appears clearly inconsistent with its finding that the negligent failure to provide start-up instructions *was* the proximate cause.[11] If the jury's responses to the interrogatories are, indeed, inconsistent, we must remand the case for a new trial pursuant to Fed.R. Civ.P. 49(b) which, in relevant part, states:

> When the answers [to jury interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

Not suprisingly, the parties each argue that, when viewed through the proper lens, the jury's seemingly inconsistent responses can be reconciled in a manner permitting us to enter judgment in their respective favors. Repola argues that because negligence imposes a more difficult burden on plaintiffs than does strict liability—and since the jury found proximate cause on the negligence claim—we should hold that it would have found proximate causation under the strict liability theory had it been properly instructed to consider only the NJPLA charge. Morbark Pennsylvania contends that, because the jury found no proximate cause under the products liability theory, the jury would have reached the same conclusion had it not been permitted—improperly as we now conclude—to consider the separate negligence claim.

In other words, each of the parties, by asking us to focus on different halves of the jury's actual verdict, claims that we confidently can reconstruct how the jury would have responded to a unitary NJPLA charge. This strikes us as comparable to arguing that the proverbial chicken and egg conundrum can be resolved by focusing first on one half of the puzzle rather than the other. The fallacy of such reasoning is obvious. Try as we might, indeed as we are constitutionally obligated to do, we are unable to find "a view of the case that makes the jury's answers to [the] special interrogatories consistent." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 763 (3d Cir.1990) (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962)).

---

pletely extraneous to Repola's claim. He was not injured because someone failed to tell him how often to change the oil.

**11.** Morbark Pennsylvania cites several cases for the proposition that the jury's determinations with respect to the NJPLA and the negligence claims were legally inconsistent and cannot stand. *See Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256–57 (5th Cir.1988); *Sprankle v. Bower Ammonia & Chemical Co.*, 824 F.2d 409, 413–14 (5th Cir.1987); *Werner v. Upjohn Co.*, 628 F.2d 848, 860 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); *Wagner v. International Harvester Co.*, 611 F.2d 224, 229 (8th Cir.1979). We believe these cases to be inapposite. Each of these cases, like the instant dispute, involved products claims submitted to a jury under both strict liability and negligence theories. However, in each of these cases, unlike the instant dispute, the jury found that a manufacturer had been negligent, *but that the product was not defective* for strict liability purposes. These courts held that, at least under the particular factual and legal contexts at issue, such a result was inconsistent as a matter of law and could not stand. The jury in the case *sub judice*, however, determined that the product was, indeed, defective under the NJPLA for failing to contain adequate warning. The inconsistency in this case lies in the jury's determination that, although the product was defective, this defect was not the proximate cause of Repola's injury—but that Morbark Pennsylvania's negligent failure to provide oral start-up instructions *was* the proximate cause.

Consequently, we do not think that it is either fair or appropriate simply to excise the jury's negligence finding and to enter judgment for Morbark Pennsylvania based on the jury's verdict on the NJPLA claim. However, in light of our analysis of the NJPLA and our conclusion that Repola should not have been permitted to proceed with his separate negligence claim, we also see no way to salvage the jury's verdict for him. It simply is impossible for us now to predict how the jury would have voted—in terms of both liability and damages—had it been properly instructed. Under these circumstances, pursuant to Fed.R.Civ.P. 49(b), we have no alternative but to reverse the judgment and remand the case for a new trial.

## III. CONCLUSION

For the foregoing reasons, the order of the district court will be reversed and the case remanded to the district court for further proceedings consistent with this opinion. Parties are to bear their own costs.

ROSENN, Circuit Judge, concurring in part and dissenting in part.

I join in Part A of the majority's opinion holding that the New Jersey Products Liability Act (NJPLA) encompasses both oral and written failure to warn claims. I also join in Part B to the extent that it holds that the NJPLA generally subsumes common law product liability claims. I respectfully dissent, however, as to Parts C and D because I conclude that the NJPLA does not subsume a cause of action based on the negligent performance of a more stringent duty arising out of a contract independent of the statutory obligations.

### I.

The New Jersey legislature stated that the NJPLA was "not intended to codify all issues relating to product liability, but only to deal with matters that require clarification." NJPLA § 2A:58C–1. Thus, the legislature stated affirmatively that the Act did not canvass the entire legal terrain of actions brought to recover damages caused by defective products. There exists no indication that the legislature intended to eliminate causes of actions based on the negligent performance of an independent contractual duty.

The majority opinion holds that the plaintiff in this case should not be permitted to bring a separate cause of action based on breach of a contract between the manufacturer of the product and its distributor because the contractual obligation at issue does not "add much" to the statutory duty to warn imposed by § 2A:58C–4 the NJPLA.[1] I disagree. Had the separate "dealer/distributor" contract simply reiterated the statutory language of the NJPLA, then the contract would be nothing more than a contract to enforce the law. It would make no difference if the plaintiff sued on the contract or under the statute because they would be one and the same.

Here, however, the dealer/distributor contract required more than just communication of adequate information to the purchaser of the machine; the agreement between Morbark Industries and Morbark Pennsylvania specified the nature, form, and extent of the person-to-person oral demonstration the purchaser of a Super Beever was entitled to receive. The agreement provided that Morbark Pennsylvania

> Not deliver any Morbark Product until it has been properly set up and adjusted; until the Dealer has inspected a copy of the operator's manual which is to be furnished to the purchaser; and until the purchaser, or anyone he designates, has been instructed as to the safe and proper operation of the Morbark product.

This contractual duty required more than simply an oral warning; it required that an agent of Morbark give the purchaser a "start-up demonstration."

Upon performance of the start-up demonstration by the factory representative, the

---

**1.** This leaves the interesting question of whether the majority would dismiss the suit for failure to state a claim if the plaintiff brought an action based solely on the negligent performance of the dealer agreement and not under the NJPLA.

representative was to fill out a "warranty validation report." The report listed five items to be checked off by the representative as they were completed; the customer was to have been instructed on operation in all safety aspects of operating and maintaining the equipment; furnished with all parts, maintenance and instruction manuals; instructed on equipment maintenance and procedures; the representative was to check that all operator and warning decals were properly displayed on the equipment; and finally, the equipment was to have been observed under actual working conditions for at least one hour.

The start-up demonstration procedures, therefore, entailed considerably more than an oral warning to a purchaser of the dangers of operating a Super Beever. The start-up demonstration envisioned an instructional session where there would be a visual operation of the woodchipping machine, and an opportunity for interaction between the knowledgeable factory representative and the inexperienced purchaser. Put simply, a written warning appended to the product, or an oral warning of the danger of the product or its operation, is not the equivalent of an adequate, hands-on and important instructional demonstration of the operation of a hazardous piece of mobile equipment.

The possibility of recovering under a claim of strict liability for products liability should not affect Repola's right to recover as a third party beneficiary on the dealer/distributor agreement so obviously drawn for the purchaser's protection. Separate and apart from the obligations owing by a seller of a product to the purchaser under the New Jersey Products Liability Act, the defendant's duty here had its basis in a contract between the manufacturer and the dealer, and "the negligent performance of such an undertaking may give rise to a cause of action by third persons, such as plaintiff." *Essex v. New Jersey Bell Tel. Co.*, 166 N.J.Super. 124, 399 A.2d 300, 302 (1979). The plaintiff, upon his purchase of the Super Beever, became entitled to a "start-up" demonstration. The cost of the demonstration was included in the purchase price of the machine. The president of the defendant corporation, Morbark Pennsylvania, testified that "when a customer purchases a piece of equipment like the Super Beever, ... I feel it's important to have a start-up as well [as an owner's manual]."

The majority does not decide whether the contract is admissible under the "flag" of the NJPLA claim. The refusal to decide the issue of admissibility illustrates the anomaly of the majority's position. If, as the majority argues, the dealership agreement requires no more than the obligation imposed by the NJPLA, then the admissibility of the contract should be a non-issue. Common sense tells us that, in the circumstances before us, the difficulty of the plaintiff's recovery is increased if the contract is ruled inadmissible. The existence of a contract simplifies the plaintiff's case; the plaintiff need not prove that the "start-up demonstrations" were statutorily required to render the product safe; the plaintiff need only prove that he was entitled to receive a "start-up demonstration" and that defendant's negligence in failing to provide such a demonstration proximately caused the accident. The manufacturer's requirement that the purchaser of the machine receive the "start-up demonstration" perceptibly provided for a standard of care "commensurate with the reasonable foreseeable danger, such as would be reasonable in the light of the reasonable risk." *Essex*, 399 A.2d at 302, quoting *Wytupeck v. Camden*, 25 N.J. 450, 462, 136 A.2d 887, 894 (1957).

The NJPLA is generous to consumers in that it eliminates the need for the plaintiff to prove negligence on the part of the defendant; a plaintiff can recover by just proving that the product "failed to contain adequate warnings or instructions." Thus, under the statute, the additional element of negligence—that the manufacturer or seller knew or should have known of the defect—need not be proven. The NJPLA, intended to alleviate the burden of proof of plaintiffs damaged by defective products, is now being used to increase the burden on the plaintiff. Ironically, the majority has turned the shield into a sword.

## II.

The majority remarks that the submission of the negligence claim perhaps could have been overlooked but for the inconsistent jury verdict. The majority seems to believe that its conclusion that the negligence claim should have been subsumed under the NJPLA somehow creates an inconsistency in the jury verdict. When the jury verdict is closely scrutinized, however, there appears no inconsistency; indeed, the verdict displays that the jury possessed a sophisticated understanding of the legal principles involved.

The jury considered the defendant's liability on two counts. In the first count, the jury considered whether the product was defective under a theory of strict liability pursuant to the NJPLA and found that the product "was defective based on the defendants' failure to provide adequate warnings concerning the Super Beever." In the second count, the jury found that defendant Morbark Pennsylvania was negligent in the non-performance of "start-up instructions." Thus, the jury found both that the product was defective and that the defendant was negligent with respect to the start-up instructions.

The jury's finding that only the negligence with respect to the start-up instructions proximately caused the accident does not present an inconsistency. The judge instructed the jury that proximate cause meant "the defect in the product was a substantial factor which singly or in combination with another cause brought about the accident." In the portion of the charge relating to the claim of negligence, the judge described proximate cause as *"the efficient cause of the accident.* It is a cause which necessarily sets other causes in motion and which is a substantial factor in bringing about the accident and the damages complained of." (emphasis supplied)

I do not believe there is any inconsistency in finding only one defect to be the proximate cause of an accident. The jury found that the instruction manual and the decals placed on the machine to be defective, but that only the negligent non-performance of the start-up instructions proximately caused the accident. In so doing, the jury merely identified the negligent failure to give start-up instructions as "the efficient cause of the accident." The jury's verdict merely underscores the above discussion; the contract to perform a start-up demonstration provided the plaintiff with greater protection than required by the NJPLA.

## III.

In sum, I would hold that under the law of New Jersey the NJPLA does not subsume a cause of action based on the negligent performance of a contractual duty arising separately and apart from the obligations set forth in the NJPLA. The contract required something over and above mere warnings, specifically, an oral demonstration. I would also hold that a jury verdict finding a product defective because of inadequate warnings is not inconsistent with a verdict that the proximate cause of the accident was the failure of the dealer to give the product purchaser the start-up demonstration required by the separate contract.

Accordingly, I would affirm the judgment of the district court.