NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4631
_____

CAROL ANN SMITH; MARIA FELTNER; VICTOR KENASK;
JUSTIN A. BUCCHIANICO; ELIZABETH ANN BUCCHIANICO;
HILDA SHEEHAN; PHYLLIS CIRELLI; VINCENT CIRELLI, her husband;
HELEN COLACCI; LAWRENCE COLACCI, her husband; MARY JOHNSTON;
LEE JOHNSTON, her husband; JOEL LAUFER; MARLENE KANALEY;
JOSEPH PARRINO; GAIL FALCO-STILES; KELLY ANN ORANGEO;
JOHN TOZZI; GEORGE MERKLE; CARIDAD MERKLE; PAUL RUSSO, JR.;
MARY PATRICIA RUSSO, his wife; DONNA QUIGLEY; KATHY MORENO;
SAL BENANTI; NEIL BEIM; DIANA LYNN BEIM, his wife; JANET BENANTI;
ROBERT FRANCHETTI; EDWINA FRANCHETTI; MICHAEL DENNERY;
LESTER HOWARD; LISA HOWARD, his wife; RICHARD KOHN;
YVETTE KOHN, his wife; ELSIE GRAHAM; PASQUALE BARTOLOTTA;
COLEEN BARTOLOTTA; BRYAN MATRAS; KELLY MELLON;
GLENN BORGMANN; LINDA BORGMANN, hiswife; GARY GENTILE;
BARBARA GENTILE, his wife; GERALD CAPO; LOUIS DEANGELO;
GERALDINE DEANGELO, his wife; BARBARA JACKSON;
RUSSELL JACKSON, her husband,
                                        Appellants

v.

SCIENTIFIC GAMES CORPORATION;
XYZ COMPANIES I-X, fictitious entities whose true identities are presently unknown;
JOHN DOES I-X, fictitious entities whose true identities are presently unknown
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 2-08-cv-05591
(Honorable William J. Martini)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 9, 2012

Before:  SCIRICA, RENDELL and SMITH, *Circuit Judges*.

(Filed: February 1, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

At issue is whether the District Court erred in granting summary judgment for defendant, Scientific Games Corporation, in this negligence action.  Because we find that New Jersey law does not impose a duty of care on Scientific Games Corporation, we will affirm.

I

Plaintiffs are past and present New Jersey Sports and Exposition Authority ("NJSEA") employees and their spouses.  Most of the employees have worked as tellers for NJSEA at racetracks in New Jersey since the mid-1970s accepting bets from customers.

In 2006, the NJSEA issued a Request for Proposal (RFP) seeking bids from makers of betting equipment for the manufacture and supply of new betting equipment to be installed at two of its horse-racing tracks, Meadowlands Racetrack and Monmouth Park.  NJSEA's RFP included the hardware, software, and functional requirements that would be used in the evaluation of each maker's bid.  Among the functional requirements used to evaluate the proposal was NJSEA's concern "with repetitive motion injuries, carpal tunnel syndrome and other work related injuries."

Scientific Games Corporation was the incumbent equipment provider. It submitted its proposal to NJSEA on April 7, 2006, offering to supply a newer model of its betting equipment - the BetJet. Scientific Games' proposal included the hardware and software specifications of the BetJet, including the exact size and dimensions of the machine. After a demonstration of the new BetJet machine and evaluation of the proposal, NJSEA awarded Scientific Games the contract to supply the new betting equipment to the racetracks. The parties entered into a service agreement on March 11, 2007, in which NJSEA was responsible for the construction and layout of the teller windows and workstations and Scientific Games agreed to install the BetJet machines and ensure their maintenance on all race days.

Scientific Games delivered the BetJet machines to the racetracks for installation in the preexisting teller windows. In a separate delivery, Scientific Games provided the metal brackets that could be used to attach the BetJets to any wall or surface within the teller windows, which NJSEA carpenters mounted. The machines were installed on the brackets in the windows, and the employees began taking bets from customers. At some point, the employees began to complain that the configuration of the workstations, the new equipment combined with the existing cash drawers and chairs, caused them to stretch unnecessarily, causing repetitive stress injuries.

Plaintiffs brought a claim against Scientific Games in New Jersey state court alleging the negligent installation of the BetJets caused their repetitive stress injuries. Defendant removed the case to federal court under 28 U.S.C. § 1441(a). The District Court granted defendant's motion for summary judgment because Scientific Games did

not owe plaintiffs a duty of care with respect to the ergonomic installation of the BetJet units.[1]  Plaintiffs appealed.[2]

## II

As a federal court sitting in diversity, we apply the substantive law of New Jersey, whose law governs this action. *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010).  In order to prevail on a negligence claim in New Jersey, plaintiffs must prove (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages. *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008).

Under New Jersey law, a party responsible for installing equipment owes a duty of care to individuals who could potentially suffer harm if the equipment was negligently installed. *See Ridenour v. Bat Em Out*, 707 A.2d 1093 (N.J. Super. Ct. App. Div. 1998); *Essex v. New Jersey Bell Tel. Co.*, 399 A.2d 300 (N.J. Super. Ct. App. Div. 1979).

A duty is "an obligation imposed by law requiring one party to conform to a particular standard of conduct toward another." *Acuna v. Turkish*, 930 A.2d 416, 424 (N.J. 2007) (internal quotation marks omitted).  Whether there is a duty of care is a matter of law for the court to decide. *Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996).  The imposition of duty requires an analysis that is "both very fact-

---

[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  We have jurisdiction under 28 U.S.C. § 1291.

[2] We exercise plenary review over the District Court's decision to grant summary judgment.  Summary judgment is appropriate only if there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (quoting Fed. R. Civil P. 56(a)).

specific and principled; it must lead to ... sensible rules to govern future conduct."

*Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993).  The court weighs and balances several factors: "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Carvalho*, 675 A.2d at 212.  A court must determine whether imposing a duty satisfies "an abiding sense of basic fairness under all of the circumstances." *Hopkins*, 625 A.2d at 1116.

We therefore must assess whether Scientific Games had "responsibility for [the] conditions creating the risk of harm" and whether Scientific Games had sufficient control, opportunity, and ability to avoid the risk of harm. *Id*.

III

The District Court determined that Scientific Games' duty of care did not encompass the installation of the equipment in an ergonomically safe manner so that defendant had responsibility for the conditions creating a risk of harm for repetitive stress injuries.  We agree.

Plaintiffs argue that the court should impose a tort duty upon Scientific Games because the company had an obligation to install or oversee the installation of the machines to ensure they were ergonomically correct.  But the stress injuries allegedly suffered by plaintiffs were the result of the configuration of the entire workstation, which was outside the control of Scientific Games.  "The element of control arising from the relationship between the parties and the opportunity and capacity of defendant to … avoid[] the risk of harm are … relevant in considering the fairness in imposing a duty of

5

care." *Carvalho*, 675 A.2d at 214. Therefore, plaintiffs must show a connection between Scientific Games' responsibilities over the workstations and an ability to prevent ergonomic injuries in order to find a duty. *See Carvalho*, 675 A.2d at 214-15 (imposing a duty of care on the project engineer for the safety of construction workers when he had sufficient control of the site to halt work until adequate safety measures were undertaken). Because Scientific Games did not have control over the configuration of the workstations, we agree with the District Court that its duty of care did not encompass the ergonomic installation of the machines.

The contract between Scientific Games and NJSEA assigns Scientific Games the responsibility to install only the BetJet units, not the entire workstations. NJSEA retained control of and the responsibility for the maintenance of the entire workstation.[3] Plaintiffs claim their injuries stem not from the machines in isolation, but from having to stretch unnecessarily to place wagers and reach money drawers, which was not under Scientific Games' control.[4] The plaintiffs' expert report recognized that "the workstations

---

[3] Carol Smith was employed by NJSEA as a mutual teller. She testified at her deposition:
> Q: Do you know who made those changes to the money drawer?
> …
> A: Carpenters.
> …
> Q: When you say carpenters, what is your reason for knowing they are the ones who did it? Did you see them?
> A: I don't know if I saw them, but everything that is done there is done by in-house electricians or carpenters or plumbers or whatever.

[4] Mary Johnston was an employee of NJSEA at the Meadowlands racetrack for 33 years. In her deposition testimony she stated:
> Q: The money drawer is not part of the betting equipment. It is a separate thing?
> A: Correct.
> …

associated with the installation of the BetJet machines contained a number of ergonomic problems that cause exactly the sort of overuse injuries reported." As Scientific Games was responsible for the installation of the machines only - which comprised only one component of the workstation - it could not have prevented the type of ergonomic injuries suffered by plaintiffs.

As noted, Scientific Games entered into a contractual relationship with NJSEA to install the machines. NJSEA retained control of the workstations, and employees reported all injuries and issues with the workstations to NJSEA. All of the employees who suffered injuries were able to seek compensation under the New Jersey Workers' Compensation Act and did so. Because Scientific Games did not owe plaintiffs a duty of care to install its machines in an ergonomically correct manner, the negligence claim must fail.

IV

For the foregoing reasons, we will affirm the judgment of the District Court.

---

Q. Did the location and position of the money drawer cause you any problems in utilizing the money drawer given the fact that you had a taller and thicker or deeper machine?
A. Yes. . . . So it was a lot more stretching and body movement involved to get the money and to bring the money back and to go to the money drawer and make change or put it in there. There was more extension, I would say, in doing both things, putting the money in, taking the money out, and getting the money from the customer.