

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-1996

# Mosley v. Wilson

Precedential or Non-Precedential:

Docket 95-1989

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Mosley v. Wilson" (1996). *1996 Decisions.* Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 95-1989


JAMES MOSLEY,
                              Appellant
                    v.

    JOSEPH WILSON; LEWIS WILSON; PETER MANGO


On Appeal from the United States District Court
     for the Eastern District of Pennsylvania
              (D.C. No. 91-cv-00712)


Argued July 15, 1996

Before:  SLOVITER, Chief Judge,
   COWEN and ROTH, Circuit Judges


(Opinion filed December 11, l996)

Joseph P. Green, Jr.  (Argued)
Duffy & Green
West Chester, PA  19380

        Attorney for Appellant

L. Rostaing Tharaud  (Argued)
Marshall, Dennehey, Warner,
 Coleman & Goggin
Philadelphia, PA  l9l03

        Attorney for Appellee

               OPINION OF THE COURT


SLOVITER, Chief Judge.


        A federal jury was presented with four claims filed by
James Mosley against Joseph Wilson, a police officer of East

Fallowfield Township, Chester County, Pennsylvania: two claims for violations of Mosley's civil rights filed pursuant to 42 U.S.C. § 1983, one of which was for arrest without probable cause and the other for use of excessive force, and two pendent state law claims, of which one was for malicious prosecution and the other for intentional infliction of emotional distress. The jury returned a verdict for plaintiff Mosley on the malicious prosecution claim, and for defendant Wilson on the other three claims.

The district court granted Wilson's post-trial motion and entered judgment as a matter of law for him on the malicious prosecution claim. Mosley appeals.

I.

FACTS AND PROCEDURAL HISTORY

This action arose out of events that were the subject of a criminal prosecution brought in the Court of Common Pleas of Chester County, Pennsylvania. Because Mosley's civil case was tried by a jury and the district court had no occasion to make detailed factual findings, we rely largely on the depiction of the relevant background events as set forth in Commonwealth v. Mosley, 535 Pa. 549, 637 A.2d 246 (1993), the Pennsylvania Supreme Court's opinion on Mosley's appeal in the criminal case.

The initial events that transpired on the evening of January 31, 1989 are essentially undisputed. About midnight, Mosley, described by the Pennsylvania Supreme Court as "somewhat disconcerted," arrived at the police station in East Fallowfield Township and met with defendant Officer Joseph Wilson, who was on duty that night. Id. at 247. Mosley told Wilson that he had had an argument with Sharon Smith, and that he had come to report his version of the events before he was arrested. While Mosley was in the police station, the police dispatcher informed Wilson that Smith had called in a complaint against Mosley. Officer Wilson then drove Mosley back to his residence in an attempt to mediate the dispute. Id.

After arriving at Mosley's home, Wilson went inside to speak to Smith, leaving Mosley in his patrol car. He returned a few minutes later and told Mosley that he was under arrest for assault and rape. (We note that Mosley was never charged with any crime in connection with the alleged assault and rape of Smith.) Wilson then locked Mosley in the police car and made a radio call for backup assistance from a neighboring municipality, and was shortly joined by his brother, Sergeant Lewis Wilson. The two officers went inside the house to continue interviewing Smith, and left Mosley locked in the back of the patrol car. Id.

From this point, the accounts of the evening's events diverge. The police officers maintain that while they were questioning Smith, Mosley began to bang violently and kick the inside of the police car, that Officer Wilson (the defendant in this case) attempted to handcuff him, that Mosley lunged at Officer Wilson and attempted to grab his gun while threatening to kill him, that they struggled and Sergeant Wilson ran outside and pulled Mosley off his brother, and that after several minutes of "wrestling," they handcuffed Mosley and took him to the hospital. Id.

Mosley's vastly different version of the story is that after he was locked in the car for 30 minutes while the officers spoke with Sharon Smith, he began to bang on the inside of the car to get the officers' attention and gain his release. Officer Wilson came outside, opened the car door and assaulted him, and then pulled him out of the car and continued the assault, aided by Sergeant Wilson, until they beat him into submission before finally taking him to the hospital. Id.

Mosley was prosecuted and tried before a state court jury on charges arising out of the events, which convicted him on charges of terroristic threats, simple assault, recklessly endangering another person, and resisting arrest, in violation of 18 Pa.C.S.A. § 2706, § 2701(a)(1), § 2705, and § 5104, respectively. Mosley was acquitted of aggravated assault. In addition, the trial court found Mosley guilty of the summary offenses of criminal mischief and disorderly conduct, 18 Pa.C.S.A. § 3304(a)(2) and § 5503(a)(1).

On appeal, the Pennsylvania Supreme Court overturned Mosley's conviction because a key prosecution witness, Sergeant Wilson, had an ex parte conversation outside the courtroom with a juror who eventually became the jury foreperson. During the conversation, the juror told Sergeant Wilson that he was from West Caln and was a friend of the Chief of Police there, and Sergeant Wilson "complimented the juror on the quality of his hometown police department." Id. at 249. The Pennsylvania Supreme Court held that the trial judge erred in failing to question the juror about any possible taint that might have resulted from this conversation and therefore the judge was unable to determine whether the encounter constituted harmless error. Accordingly, the Court vacated Mosley's conviction and granted him a new trial. Id. at 250. Instead of retrying the case, however, the prosecutor granted Mosley nolle prosequi and dropped all criminal charges against him.

Before the resolution of his appeal of conviction, Mosley filed this civil suit against Officer Wilson, Sergeant Wilson, and police chief Peter Mango, alleging that the police committed battery, assault, false imprisonment, malicious prosecution, and malicious use and abuse of process. Mosley eventually dismissed the claims against Sergeant Lewis Wilson and Peter Mango, and trial proceeded before a jury on all claims against Officer Joseph Wilson in the Eastern District of Pennsylvania, bifurcated as to liability and damages. The first trial ended in a hung jury. At the second trial, Mosley's claims were reduced to two federal civil rights claims filed pursuant to 42 U.S.C. § 1983 alleging arrest without probable cause and use of excessive force, and two pendent state law tort actions of malicious prosecution and intentional infliction of emotional distress. The jury returned a verdict in favor of Mosley on the state claim of malicious prosecution, but found for Wilson on all other counts.

Following the verdict, Wilson, arguing that the verdict on malicious prosecution was inconsistent with the verdict in his favor on the civil rights claims, moved to "mold the verdict into a consistent verdict." App. at 102. The district court granted

the motion, issuing judgment as a matter of law pursuant to Fed. R. Civ. P. 50 for Wilson on the malicious prosecution claim on the ground that the verdicts on the different counts were "blatantly inconsistent." Id. The district court reasoned that because the jury must have found that probable cause existed to find for Wilson on the unlawful arrest claim, and because probable cause for arrest is a "necessary element" in the malicious prosecution claim, the verdicts were legally inconsistent. The district court reasoned: "If probable cause existed for one claim, it had to exist for the other claim." Id. Consequently, the court "molded" the verdict in favor of Wilson on all counts.

Mosley's appeal brief states that he seeks reinstatement of the malicious prosecution verdict, and if he could present his damage claim to the same jury he would waive retrial on the civil rights claims. He states that if that jury is not available, he seeks remand for a new trial on both his malicious prosecution claim and on his civil rights claims, because the latter were marred by a legally erroneous instruction. Obviously, the same jury is not available, and we confine ourselves to Mosley's request for a new trial on the civil rights claims as well as the malicious prosecution claim.

II.
DISCUSSION
A.

We consider first Mosley's contention that the district court erred in applying Rule 50(b) setting aside the jury's verdict for Mosley on the malicious prosecution claim based on the court's view that that verdict was inconsistent with the jury's verdict for Wilson on the civil rights claims. Our review of the court's grant of judgment as a matter of law is plenary. Duquesne Light Co. v. Westinghouse Electric Corp., 66 F.3d 604, 613 (3d. Cir. 1995).

Under Rule 50(a), the court may grant judgment as a matter of law only if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). In granting judgment as a matter of law following a jury verdict, the district court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the "'minimum quantum of evidence from which a jury might reasonably afford relief.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691 (3d Cir. 1993) (quoting Keith v. Truck Stops Corp., 909 F.2d 743, 745 (3d Cir. 1990)).

Here, the district court did not conclude that there was insufficient evidence to support the jury's finding of malicious prosecution. Instead, the court concluded only that the jury's verdict for Mosley on the malicious prosecution claim was inconsistent with its verdict for Wilson on the civil rights claim. The court explained as follows:

In order for the jury to have found in favor of the defendant on plaintiff's civil rights claim for arrest

> without probable cause, the jury would have had to conclude that the defendant did in fact have probable cause to arrest the plaintiff. However, in order to have found in favor of the plaintiff on the malicious prosecution claim, the jury would have had to conclude that the defendant lacked probable cause to arrest plaintiff since lack of probable cause is a necessary element of a claim for malicious prosecution in Pennsylvania. . . . Thus, the jury's verdict as to those two claims was blatantly inconsistent.

App. at 102 (emphasis in original).

Wilson cites no authority that authorizes a district court to grant judgment as a matter of law based on the jury's inconsistency on different claims. The closest analog in the Federal Rules of Civil Procedure appears in Rule 49(b) which considers the appropriate course when a jury returns inconsistent answers to interrogatories or when a general verdict is accompanied by one or more inconsistent interrogatory answers. See Fed. R. Civ. P. 49(b). In the latter circumstance the district court must either return the jury for further consideration of the verdicts or order a new trial. As we explained in Repola v. Morbark Industries, Inc., 934 F.2d 483, 495 (3d Cir. 1991), it would be "[n]either fair [n]or appropriate simply to excise the jury's . . . finding and to enter judgment for [defendant]" based on the jury's verdict on a different claim that rendered the verdicts inconsistent. Without the court finding that the evidence was insufficient, the decision would be arbitrary and would trench on the Seventh Amendment.

Indeed, the inappropriateness of entering judgment as a matter of law solely on the basis of inconsistent verdicts is evident in the procedural requirements for such a judgment established by the Federal Rules of Civil Procedure. A motion for judgment as a matter of law rendered after trial must be made on grounds that were previously asserted in a motion for directed verdict prior to submission of the case to the jury. See Fed. R. Civ. P. 50(b) advisory committee's note; see also Simmons v. City of Philadelphia, 947 F.2d 1042, 1077 (3d Cir.), cert. denied, 503 U.S. 985 (1991); Abraham v. Pekarski, 728 F.2d 167, 172 (3d Cir.), cert. denied, 467 U.S. 1242 (1984). Obviously the inconsistency of the verdicts could not have been raised in a motion for directed verdict prior to jury deliberations.

Rule 49(b) does not address the issue before us here – that of inconsistent general verdicts. We have found little precedent on this issue but there is a comprehensive discussion of inconsistent general verdicts in the opinion of Justice Stevens in Los Angeles v. Heller, 475 U.S. 796, 804–06 (1986) (Stevens, J. dissenting), where the underlying fact pattern bore some similarity to that before us. Although the Supreme Court did not address the issue before us in its per curiam decision, Justice Stevens' dissent did discuss at some length whether inconsistent general verdicts in a civil case should be allowed to stand. Justice Stevens noted that when faced with apparently inconsistent verdicts in a civil case, the district court can

take several approaches. He noted that "in certain circumstances, a court retains the authority, even in a civil case, to allow an apparently inconsistent verdict to stand." Heller, 475 U.S. at 805; see United States Football League v. National Football League, 644 F. Supp. 1040, 1045 (S.D.N.Y. 1986) (stating that "inconsistent verdicts on separate claims in a civil action are fully permissible."), aff'd, 842 F.2d 1335 (2d Cir. 1988); see also Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290 n.17 (2d Cir. 1969) (stating that "consistent jury verdicts are not, in themselves, necessary attributes of a valid judgment."), cert. denied, 397 U.S. 913 (1970).

Second, Justice Stevens noted the court's "duty to attempt to read the verdict in a manner that will resolve inconsistencies." Heller, 475 U.S. at 806. In this court, that requirement is illustrated by our decision in Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 108 (3d Cir. 1993), holding that a jury's finding that 100% of the harm was due to one defendant's actions was not inconsistent with the jury's finding of liability for all of the defendants.

Third, Justice Stevens referred to the trial judge's responsibility "upon receiving an apparently inconsistent verdict . . . not to retain half of the verdict, but to resubmit the question to the jury." Heller, 407 U.S. at 806. That duty is comparable to the requirement imposed by Rule 49(b) when the answers to special interrogatories are inconsistent. See note 1, supra.

Finally, Justice Stevens observed that "if verdicts are genuinely inconsistent and if the evidence might support either of the 'inconsistent' verdicts, the appropriate remedy is ordinarily, not simply to accept one verdict and dismiss the other, but to order an entirely new trial." Heller, 407 U.S. at 806. He then cited this court's opinion in Malley-Duff & Associates, Inc. v. Crown Life Ins. Co., 734 F.2d 133, 145 (3d Cir.), cert. denied, 469 U.S. 1072 (1984), which, although it dealt with inconsistent special verdicts under Rule 49(a) rather than inconsistent general verdicts, is illustrative of the procedure to be used in the latter situation.

It is of considerable significance that none of the approaches referred to by Justice Stevens supports the action of the district court in this case, i.e., directing a judgment notwithstanding the jury's verdict on one claim on the sole ground that it was inconsistent with the jury's verdict on another claim. It follows that the district court erred as a matter of law.

B.

Wilson argues that we should sustain the district court's order on the ground that it "correctly amended" the jury's verdict for Mosley on his malicious prosecution claim because the jury's verdict was precluded as a matter of law. He argues that despite the later reversal of Mosley's conviction by the Pennsylvania Supreme Court, Mosley's conviction by the jury for terroristic threats, assault, reckless endangerment and resisting arrest, and the court's conviction of him on his summary offenses arising out of the same incident, was

dispositive of the probable cause issue in his civil action. Therefore, he claims, the issue of probable cause should never have gone to the jury.

Issue preclusion, or collateral estoppel, bars relitigation of issues adjudicated in a prior action. Swineford v. Snyder County Pa., 15 F.3d 1258, 1266 (3d Cir. 1994). Under this principle a conviction ordinarily will be a bar to a subsequent state court suit for damages, such as one for malicious prosecution. See W. Page Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on The Law of Torts § 119, at 874 (5th ed. 1984). The underlying rationale given is that because a plaintiff in a malicious prosecution action must show the favorable termination of the underlying proceeding, a civil plaintiff whose conviction has not been reversed is unable to prove one of the essential elements of the tort – lack of probable cause for the proceeding. Id.

A different situation is presented when a conviction has later been overturned. The courts appear to be divided on the preclusive effect that the initial conviction should have on the issues of probable cause for the arrest and/or prosecution in a subsequent action for malicious prosecution brought against the police or municipal authorities. On one hand, the Restatement (Second) of Torts, views a conviction, even if later overturned, as "conclusively establish[ing] the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." Restatement (Second) of Torts § 667(1) (1977). The rationale given is that a guilty verdict establishes "that the person who initiated the proceedings had reasonable grounds for so doing." Id. at § 667(1) cmt. b.

On the other hand, there is "a considerable minority view which regards the conviction as creating only a presumption, which may be rebutted by any competent evidence showing that probable cause for the prosecution did not in fact exist." Prosser and Keeton on The Law of Torts § 119, at 882.

The division among the states was noted in the separate opinions in Heck v. Humphrey, 114 S. Ct. 2364 (1994), where a closely divided Supreme Court considered the related issue of the effect of a conviction on the plaintiff's right to recover damages in a civil rights action brought under 42 U.S.C. § 1983. Justice Scalia authored the majority opinion, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 2372 (emphasis added). Justice Souter, writing separately for the four Justices who concurred only in the judgment, agreed with the majority insofar as its rule applied to prison inmates seeking § 1983 damages in federal court, but objected to application of the majority's rule to those civil plaintiffs "who cannot first obtain a favorable state ruling," or who can no longer bring a

habeas action because they are no longer in custody. Id. at 2379 (Souter, J. concurring in the judgment).

Heck did not involve a conviction that had been reversed on direct appeal, as Mosley's was here, but in the course of the two opinions and their footnotes the Justices alluded to the effect of a conviction that was later reversed on a common law malicious prosecution claim. Justice Souter cited authority that at common law a prior conviction, although reversed, "dissolved [a] claim for malicious prosecution because the conviction was regarded as irrebuttable evidence that the prosecution never lacked probable cause." Id. at 2377. He acknowledged that this rule has been relaxed in more recent times. Id. at 2377 n.3.

Justice Scalia responded that even early in the common law it was recognized that there must be exceptions (such as in cases involving fraud, perjury, or mistake of law) to "the general rule that a conviction defeated the malicious prosecution plaintiff's allegation (essential to his cause of action) that the prior proceeding was without probable cause." Id. at 2372 n.4. He further noted that the Court had recognized in Crescent City Live Stock Co. v. Butchers' Union Slaughter-House Co., 120 U.S. 141, 149 (1887)), that "'[h]ow much weight as proof of probable cause shall be attributed to the judgment of the court in the original action, when subsequently reversed for error, may admit of some question.'" Id.

We must look to the current state of Pennsylvania law because malicious prosecution is a common law claim, and we are bound to give a state court judgment the same preclusive effect as would the courts of that state. See 28 U.S.C. § 1738 (1988); Swineford, 15 F.3d at 1266. If the highest court has not spoken to the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule. Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994).

The Pennsylvania Supreme Court has apparently not determined what preclusive effect should be given to a conviction that was later overturned in a subsequent malicious prosecution suit. There are contrary signals from the intermediate Pennsylvania courts. Compare Cosmas v. Bloomingdales Bros., Inc., 442 Pa. Super. 476, 482, 660 A.2d 83, 86 (1995) (stating that a conviction even if overturned is conclusive proof of the existence of probable cause unless the party can show undue influences at work in the conviction proceedings) with Cap v. K-Mart Discount Stores, Inc., 357 Pa. Super. 9, 12, 515 A.2d 52, 53 (1986) (holding that conviction by a justice of the peace reversed on appeal does not preclude action for malicious prosecution even without any showing of undue influence in the process). Fortunately, we need not predict in this case precisely how the state supreme court would resolve the issue because under either analysis, Mosley's jury conviction, which was later overturned, could not preclude litigation of the issue of probable cause in this civil action.

In this case, we will assume arguendo that Wilson correctly states that under Pennsylvania law "the overturning of a conviction does not negate the finding of probable cause by the court absent 'fraud or other undue influences.'" Appellee's brief at 11 (quoting Cosmas, 660 A.2d at 86). We therefore proceed to examine the Pennsylvania Supreme Court's opinion reversing Mosley's conviction to ascertain whether the basis for its action undermines the effect of the original conviction on the establishment of probable cause.

Examination of the opinion shows that the Court reversed Mosley's conviction because of its concern that Mosley's trial was tainted by a lack of objectivity on the part of the jury. The Court "decline[d] to adopt a per se rule which would require the disqualification of a juror anytime there is ex parte contact between that juror and a witness," but instead held that when such a "communication or contact has occurred between a juror and a witness, prejudice may be inferred at the discretion of the trial judge." Mosley, 637 A.2d at 249. To rebut the inference of prejudice, "the communication must be explained or shown to be harmless." Id.

The Court then reviewed the contact in this case:

> In the instant case, an important Commonwealth witness engaged in an ex parte conversation with a juror who later served as foreman of the jury. The witness, Sergeant Lewis Wilson, was not only one of the arresting officers, but was also directly involved in the altercation which led to the charges upon which Appellant was convicted. Since there were no corroborating eye witnesses, the case turned on a credibility determination between Appellant and the two police officers.

> The conversation between Sergeant Wilson and the juror amounted to more than a brief, incidental contact. The two engaged in a dialogue in which the juror conveyed the fact that he was from West Caln and was a friend of the Chief of Police in that municipality. Sergeant Wilson then complimented the juror on the quality of his hometown police department.

Id. at 249. The Court further stated:

> Although we diverge from the "rebuttable presumption of prejudice" rule used by the [Supreme Court of Utah] in Pike, we agree with the view that a juror may be subject to a subconscious influence or bias as a result of an unexpected cordial encounter with a witness. This subconscious influence may have the improper effect of enhancing the credibility of the witness in the eyes of that juror.

> In the instant case, the trial judge never questioned the juror about any possible taint which may have resulted from his conversation with Sergeant

Lewis. Instead, defense counsel was given the opportunity to call witnesses in support of his Motion to Disqualify the Juror. This placed defense counsel in the difficult position of deciding whether to avoid questioning the juror or run the risk of antagonizing a juror who might remain to decide his client's fate. The juror was never called as a witness by either side at the voir dire hearing on the Motion. Without the juror's testimony, the trial judge was not in a position to determine that the encounter between Sergeant Wilson and the juror amounted to harmless error. Consequently, the trial judge's denial of Appellant's Motion to Disqualify the Juror was an abuse of discretion.

Id. at 250. The Court concluded:

We, therefore, cannot say with any degree of certainty that the contact did not establish a rapport, albeit unconscious, between Sergeant Wilson and the jury foreman which in some way influenced the outcome of the trial.

Id. (emphasis added).

The Pennsylvania Supreme Court's lack of confidence in the reliability of the factfindings seems to us to be precisely the sort of "undue influence" referred to in Cosmas and encompassed by the Restatement (Second) of Torts § 667(1). Even courts that today adhere to the view that a conviction notwithstanding reversal is proof of probable cause leave some opening for these situations where the reversal impugns the reliability or integrity of the factfinding in the initial conviction. That was certainly the case in the Pennsylvania Supreme Court's reversal of the conviction in Mosley. We believe that the Pennsylvania courts, even if the position in Cosmos is adopted by its Supreme Court, would find that the circumstances set forth in the Mosley opinion are the kind of "undue influence" that negates the finding of probable cause that stems from the initial conviction. For this reason, we hold that Mosley's conviction in the Court of Common Pleas on charges of terroristic threats, simple assault, recklessly endangering another person and resisting arrest are not conclusive of whether there was probable cause to prosecute him for these offenses. Accordingly, once his conviction was overturned, he was entitled to litigate the issue in his civil case and the district court erred in declining to give Mosley the benefit of the jury's judgment on his claim of malicious prosecution.

We will therefore reverse the trial court's order granting judgment as a matter of law on the malicious prosecution claim. Because the district court entered its judgment before the jury considered the damage issue, we will remand for a new trial.

C.

Of course, the Supreme Court's holding in Heck would

also apply to Mosley's § 1983 claims, the issue directly before the Court in that case.  However, the district court permitted Mosley's § 1983 claims to go to the jury, which decided against him.  Mosley nonetheless argues that he is entitled to a new trial on his civil rights claims because the district court gave an erroneous jury charge.  The portion of the charge to which Mosley points was as follows:

> The negligence on the part of a police officer does not violate a person's constitutional rights . . . .  In order to find the police officer liable to the plaintiff, you must find that he acted with deliberate or reckless indifference to [Mosley's] safety. Davidson v. O'Lone, 752 F.2d 817, 828 (3d Circuit 1984), affirmed sub nom. Davidson v. Cannon, 106 S. Ct. 668 (1986).

> Deliberate or reckless indifference does not simply mean extreme carelessness; it means much more. To be found deliberately or recklessly indifferent, the defendant must have disregarded a serious known risk of harm under circumstances which make that disregard clearly unreasonable.

App. at 33-34 (emphasis added).  At the court's invitation, a juror requested that these paragraphs be repeated as soon as they were given, and the court did so.

Our review of the jury charge is plenary as Mosley claims the district court employed an incorrect legal standard in stating that Mosley was required to prove deliberate indifference by the police officer to succeed on those claims.  Griffiths v. Cigna Corp., 988 F.2d 457, 462 (3d Cir.), cert. denied, 510 U.S. 865 (1993).  If, looking at the charge as a whole, "the instructions were capable of confusing and thereby misleading the jury," we must reverse.  Id.

It is not entirely clear whether the trial court intended that its instruction that the jury had to find that Wilson acted "with deliberate or reckless indifference to [Mosley's] safety," App. at 32-33, was to pertain only to the excessive force claim or to both civil rights claims.  The instruction did not identify the particular "constitutional rights" to which it referred.  Reading the full charge, we believe there was sufficient ambiguity in this regard that the jury could have been led to believe that it had to find that Wilson acted with deliberate or reckless indifference with regard to both civil rights claims.

In a case such as this, where it is undisputed that the arrest and use of force were intentional acts, the district court erred by instructing the jury as to "deliberate indifference." This instruction required the jury to determine the officer's subjective intent, whereas the appropriate inquiry on both civil rights claims is an objective one.

To find that there was an unlawful arrest in violation of the Fourth Amendment, the jury need only have found that under the facts and circumstances within Wilson's knowledge, a

reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested. SeeOrsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995); United States v. Cruz, 910 F.2d 1072, 1076 (3d. Cir.), cert. denied, 498 U.S. 1039 (1991). To find that Wilson used excessive force, the jury was required to determine whether he used force that was objectively reasonable under the circumstances and facts confronting him at that time, without regard to his underlying motivation. See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). Neither of these inquiries required the jury to consider Wilson's subjective intent. Accordingly, an instruction on "deliberate indifference" had no place in connection with either of the § 1983 claims and erroneously added an element of subjective intent to Mosley's claims.

The district court cited Davidson v. O'Lone, 752 F.2d 817, 828 (3d. Cir. 1984) (en banc), affirmed sub nom. Davidson v. Cannon, 474 U.S. 344 (1986), in support of its deliberate indifference instruction. In Davidson, we held that an allegation that prison officials had negligently failed to protect the plaintiff inmate from another inmate did not state a claim under § 1983 for deprivation of a Fourteenth Amendment liberty interest, a conclusion affirmed by the Supreme Court. That case is inapplicable here where there is no dispute that Wilson committed intentional acts when he arrested Mosley and used physical force against him. Whether he intended to violate his civil rights in the process is irrelevant.

Wilson argues that even if there were error in the charge, it was harmless. As his counsel stated at oral argument: "I simply do not believe that given the facts of the case, this notion of `deliberate indifference'. . . that doesn't appear to have any direct application here would have been a serious consideration." Alternatively, Wilson argues that the error actually benefitted Mosley by allowing the jury to find in his favor even if the deprivation of his rights was not intentional, because the deliberate indifference standard is "lower" than that for an intentional deprivation of rights. Appellee's Brief at 13-14.

A trial court's errors are harmless only if it is "highly probable" that they did not affect the outcome of the case. McQueeney v. Wilmington Trust Co., 779 F.2d 916, 924 (3d Cir. 1985). We need not decide whether in all circumstances a jury instruction that has no application to the charges at issue leads to reversible error because in this case we believe that the charge was indeed "capable of confusing and thereby misleading the jury." Griffiths, 988 F.2d at 462.

The jury could not be expected to understand that the deliberate indifference instruction was inapplicable and should have been disregarded. Certainly the deliberate indifference charge given could have led a jury consisting of laypersons unfamiliar with the complex jurisprudence of § 1983 to inject a state of mind inquiry. It may have believed that to find for Mosley on his unlawful arrest claim, it was required to find not only that Wilson lacked probable cause to arrest him but also

that Wilson was subjectively aware of the potential violation of Mosley's rights, and "deliberately indifferent" thereto. Similarly, as to the excessive force claim, the charge could have led a jury to believe that it had to find not only that Wilson used excessive force under the circumstances, but that he did so with "deliberate indifference," in the sense that he was aware that the force he was using might be excessive.  Because a finding concerning the officer's state of mind is not required for either civil rights claim, we cannot find that it is "highly probable" that the jury's verdict was unaffected by the deliberate indifference instruction and therefore harmless error. We will therefore also remand the § 1983 claims as well to the district court for a new trial.

III.

CONCLUSION

For the foregoing reasons, we will reverse the order of the district court granting Wilson judgment as a matter of law on the malicious prosecution claim, and remand that claim as well as Mosley's civil rights claims to the district court for a new trial.

_____