

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-8-2003

# PXRE Corp v. Terra Nova Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3426

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"PXRE Corp v. Terra Nova Ins Co" (2003). *2003 Decisions.* Paper 215.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/215

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 02-3426

———————

PXRE CORPORATION

v.

TERRA NOVA INSURANCE COMPANY LTD.,
Appellant


———————

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 00-cv-05314)
District Judge:  Honorable Joel A. Pisano

———————

Argued June 3, 2003

BEFORE:  ALITO, ROTH and STAPLETON, Circuit Judges

(Opinion Filed October 6, 2003)


———————


Arnold C. Lakind
Szaferman, Lakind, Blumstein, Watter & Blader
101 Grovers Mill Road
Quakerbridge Executive Center - Suite 104
Lawrenceville, NJ  08648
 and

Sandor Frankel
M. Breeze McMennamin (Argued)
Frankel & Abrams
230 Park Avenue - Suite 3330
New York, NY  10169
 Attorneys for Appellee

John M. Aerni
Michael Lesch (Argued)
LeBoeuf, Lamb, Greene & MacRae
125 West 55th Street
New York, NY  10019
 and
Donna L. Gordon
LeBoeuf, Lamb, Greene & MacRae
One Riverfront Plaza
Newark, NJ  07102
 Attorneys for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

I.

Terra Nova Insurance Company ("Terra Nova") appeals the judgment of the United States District Court for the District of New Jersey.  A jury verdict awarded Appellee, PXRE Corporation, $9,791,779.24, finding that Terra Nova's agent had apparent authority to issue to PXRE two insurance policies on Terra Nova's behalf, totaling $10 million.   The District Court denied Appellant's motions for judgment as a

matter of law or for a new trial. Terra Nova asserts that it is entitled to judgment as a matter of law because the Appellee failed to satisfy a duty of inquiry regarding the scope of the agent's authority. Alternatively, Terra Nova asserts that a new trial is warranted because the District Court failed to instruct the jury that PXRE had such a duty.

II.

Harold Mollin owned Customized Worldwide Weather Insurance Agency ("Customized"). From 1995-2000, Mollin was an agent for Terra Nova, an English company. Mollin was authorized by Terra Nova to issue policies for up to $500,000 per risk. Customized specialized in writing weather insurance. Weather insurance provides protection for those having insurable interests in weather-related contingencies. For example, a city may get weather insurance against excess snowfall leading to unexpected snow removal expenses, or a power plant could get insurance against an unusually warm winter, leading to less heating revenue.

A weather derivative is similar to weather insurance; however, it differs from weather insurance in that a derivative takes the form of a financial instrument, the parties need not be licensed insurers, and no insurable interest is required to purchase the derivative.

PXRE Corporation is an insurance holding company with offices in Edison, New Jersey. PXRE's subsidiaries write catastrophe and property reinsurance. Stephen Goldstein, a PXRE employee from 1996 to 1999, was in charge of "exotic" transactions

at PXRE. Goldstein was contacted by an energy broker in May of 1999, and asked to "transform" a weather derivative.

In a transformation transaction, one party wishes to purchase a weather derivative, while another party looks to issue a weather insurance policy. A middleman, the transformer, acts as the link between the two parties. The party seeking to acquire a weather derivative pays a premium to the transformer for a weather derivative specifying a recovery amount if the specified weather contingency occurs. The transformer takes the premium and acquires weather insurance covering the identical contingency. For acting as the go-between, the transformer receives a transforming fee.

In the transformation transaction suggested by the broker, Koch Energy Trading, Inc., would purchase a weather derivative from PXRE for $805,000 in return for a promise to receive up to $6 million if the temperature at the Pittsburgh airport met a specified contingency. PXRE would transform the derivative and purchase weather insurance from Terra Nova, via Customized, for $765,000 that would pay a maximum of $6 million pursuant to the identical contingency. PXRE would pocket the extra $40,000 as the transformation fee.

Goldstein sought assurances that Customized had authority to issue policies for Terra Nova. Customized attempted to address these concerns by sending a sample policy, printed on a document with Terra Nova's letterhead. PXRE also received from Customized an incomplete copy of the cover note issued by Terra Nova to Customized.

4

Missing from the copy was the portion stating that Customized could only write insurance for risks up to $500,000. Customized explained the incomplete cover note by asserting that portions of it were confidential.

Goldstein told Mollin that he wanted to speak directly to Terra Nova. Customized responded that all communications with Terra Nova must be made through Customized. To satisfy Goldstein's concerns, Mollin asked his insurance broker for Terra Nova to prepare a letter stating that Customized had authority to bind risks as a Managing General Agent on behalf of Terra Nova Insurance Co.

Goldstein received a copy of a letter sent from the insurance broker stating:

Harold, I refer to your recent enquires and would advise you that the worldwide binding authority account for Terra Nova is written by Graham Wilson of Terra Nova, who is based in London Underwriting Centre in London. The binding authority ... allows you and those of your employees named in the contract to bind risks on behalf of Terra Nova Insurance Co. (UK).

The risks are strictly limited to weather for the perils of rain, snow, and temperature and are subject to the geographical limits of the United States.

Your relationship with Terra Nova has existed over a number of years as you have a similar facility for risks that are domiciled in Canada.

I can confirm that Terra Nova has been given a copy of your current E & O arrangements, which has policy limits of US$50 million.

The Limits and terms of the binding authority are those that are contained in our cover note which has been issued in

5

respect of this cover.

I trust you will find this resume of assistance.

App. 1246. A few days later, PXRE received a copy of this letter initialed by Graham Wilson and bearing the Terra Nova seal. It is undisputed that the seal and the initials are authentic.

PXRE signed the first transformation contract on May 17, 1999, but did not release the premium.

Goldstein testified that, during May and June of 1999, he spoke to Terra Nova representatives on at least two occasions, who confirmed that Customized was Terra Nova's agent. He also testified that on May 18, 1999, the day after signing the transformation deal, but before releasing the premium payment, he spoke with a person he believed to be Graham Wilson at Terra Nova (the number he dialed checked out to be Graham Wilson's direct line). He told this person that he had just transformed a substantial weather-derivative contract with Terra Nova through Customized. The person did not indicate that the transaction was unauthorized.

PXRE released the premium after the phone conversation. The policy provided that the contract was not cancellable once the premium had been paid.

On June 7, 1999, PXRE entered into a second transformation contract. The second contract was between Duke Energy Trading & Marketing LLC and Customized. Duke paid PXRE a $1,066,667 premium on a derivative that would pay up to $4 million.

6

PXRE thought it had purchased a $4 million insurance policy from Terra Nova, through Customized. The premium was $1,030,000, giving PXRE a $36,667 fee. After the second transaction, there was testimony that, on June 9, 1999, PXRE employee Goldstein left a phone message for Terra Nova employee Graham Wilson to call him because he had just transformed a second large weather derivative. PXRE was never called back. Terra Nova disputes having received the call.

Months later, PXRE sought payment on the policies and Mollin confessed to having converted the premium payments to his own use. Terra Nova refused to honor the policies. PXRE, out several million dollars, sued Terra Nova.

### III.

At trial, Graham Wilson of Terra Nova testified that it was unusual for Terra Nova to receive inquiries about the authority of one of their agents. When such inquiries occurred, Terra Nova would confirm that the agent was authorized to write policies for it but would not disclose the terms and limits of the agents's authority, information that Terra Nova considered confidential. Wilson testified that it was up to the agent whether to disclose the limit to the potential insured.

The judge instructed the jury as follows:

> Here, you must determine (1) whether Terra Nova engaged in
> conduct that created the appearance that Worldwide Weather
> [Customized] was authorized to issue insurance contracts
> such as those in dispute, (2) whether PXRE relied on that
> appearance, and (3) whether PXRE, judged as a person of
> ordinary prudence, conversant with the business uses and

7

> nature of the particular business type in issue, acted reasonably in relying on that appearance of authority, and was justified in presuming that Worldwide Weather had the authority to issue the contract in question.... When considering whether PXRE acted reasonably you may consider whether a reasonable person would have inquired further into Customized Worldwide Weather's authority.

The jury found in favor of PXRE.

Terra Nova moved for judgment as a matter of law, or, alternatively, a new trial pursuant to Federal Rules of Civil Procedure 50 and 59. Terra Nova asserted that, as a matter of law, PXRE did not satisfy its duty of inquiry and that the court erred in not instructing the jury on this duty. Alternatively, Terra Nova asked for a new trial, claiming that the instructions did not give the jury the opportunity to consider whether PXRE had satisfied its duty of inquiry. The District Court denied both motions.

IV.

Terra Nova argues that the court erred in refusing to instruct the jury that PXRE had a duty of inquiry once PXRE had notice that some limitations on Customized's authority existed. Terra Nova insists that PXRE failed to meet this duty of inquiry as a matter of law, and, therefore, we should direct the entry of judgment in its favor. Alternatively, Terra Nova contends that the erroneous jury instruction should result in a new trial.

PXRE's initial response is that Terra Nova has waived its right to have a

8

judgment as a matter of law entered in its favor because it failed to make such a motion at the close of evidence. PXRE also presents several other arguments asserting that Terra Nova has waived its right to contest the jury instruction. We do not reach PXRE's waiver arguments because we elect to affirm the District Court's judgment on its merits.

A.

"Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, the court may grant a renewed motion for judgment as a matter of law if 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for' the prevailing party. Fed. R. Civ. Proc. 50(b). The 'legally sufficient evidentiary basis' has also been characterized as a 'minimum quantum of evidence,' *Keith v. Truck Stops Corp.*, 909 F.2d 743, 745 (3d Cir. 1990), or even as 'any rational basis for the verdict.' *Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 259 (3d Cir. 1987), cert. denied, 488 U.S. 1004, 102 L. Ed. 2d 774, 109 S. Ct. 782 (1989)." *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 288 (3d Cir. 1993). The evidence must be viewed in the light most favorable to the non-moving party. *Mosely v. Wilson*, 102 F.3d 85, 89 (3d Cir. 1996).

We review a District Court's decision to deny a motion for a new trial under Federal Rule of Civil Procedure 59(a) for an abuse of discretion. *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 445 (3d Cir. 2003). "An abuse of discretion occurs when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citations

9

omitted). "The standard of review of a district court's ruling on points for charge is abuse of discretion. *See United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984). We must 'determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury.' *Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir. 1977). We do not isolate particular language, but rather examine it in the context of the entire jury charge." *United States v. Tiller*, 302 F.3d 98, 103 n.3 (3d Cir. 2002).

## B.

Terra Nova argues that, because PXRE knew there were limitations on Customized's agency with Terra Nova, it had a duty to inquire about the scope of that agency. Terra Nova points to three facts that, it asserts, gave PXRE this knowledge. First, a packet of documents received by PXRE stated that Customized could bind weather risks "as per our cover note." App. 1239. Second, that package included an incomplete copy of the cover note that did not state a dollar limit on its authority to bind Terra Nova. Third, Terra Nova, in the copy of the letter from Customized's London broker, indicated that Customized's authority to bind risks was subject to the cover note.

The District Court concluded that PXRE did not have an absolute duty of inquiry, but rather a duty to act reasonably in relying on the appearance of authority created by Terra Nova.

Both parties concede that Mollin and his agency, Customized, lacked actual

10

authority to issue the policies on Terra Nova's behalf. Therefore, the relevant question becomes whether Customized had apparent authority to issue the policies.

Our review of the New Jersey case law dealing with apparent authority persuades us that New Jersey law is consistent with the common law principles set forth in the *Restatement (Second) of Agency*, which are frequently relied upon by the New Jersey Supreme Court. *See, e.g.*, *Sears Mortgage Corp. v. Rose*, 634 A.2d 74 (N.J. 1993); *Lewis v. Travelers Ins. Co.*, 239 A.2d 4 (N.J. 1968). We will look to these principles and to the New Jersey case law for guidance in resolving the dispute before us.

Nothing in New Jersey case law or the Restatement suggests to us that a third party has an affirmative duty to inquire of one appearing to be a general agent regarding the scope of his authority. Rather, what is required is that the third party act reasonably in light of the facts of which it has notice. Accordingly, we find no fault with the instruction given by the District Court.

The New Jersey Supreme Court applies the following standard in its apparent authority inquiry: "'The question in every such case is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question, and when the party relying upon such apparent authority presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to

11

the jury.'" *United States Plywood Corp. v. Neidlinger*, 194 A.2d 730 (N.J. 1963) (quoting *J. Wiss & Sons Co. v. H.G. Vogel Co.*, 86 N.J.L. 618, 621 (E. & A. 1914)). The Restatement states that "[t]he rules as to the liability of a principal for authorized acts, are applicable to unauthorized acts which are apparently authorized." *Restatement (Second) of Agency* § 159. "[T]he principal is affected by apparent authority only as to those who rely upon conduct of the principal which causes them to believe that the 'agent' is authorized." *Restatement (Second) of Agency* § 159, cmt. b.

Here, a jury could reasonably find that, on account of Terra Nova's conduct, PXRE reasonably relied on Customized's apparent authority to issue the policy. Terra Nova had appointed Mollin and his agency as Terra Nova's agent. Terra Nova's insurance broker sent, at Customized's request, a letter to be shown to prospective insureds, indicating that Mollin and Customized were authorized to issue policies on behalf of Terra Nova. A copy of this letter was later received, bearing Terra Nova's seal and initialed by Terra Nova's chief underwriter for North American Business, Graham Wilson. Finally, before releasing the payment on the first transformation, PXRE contacted whom it believed to be Graham Wilson at Terra Nova (the number dialed was, in fact, Graham Wilson's direct line). PXRE indicated that it had just transformed a substantial weather derivative contract with Terra Nova through Customized. The person did not indicate that the deal was unauthorized. After the second transaction, there was testimony that, on June 9, 1999, PXRE left a phone message for Wilson to call because it

12

had just transformed a second large weather derivative.  PXRE was never called back.

Terra Nova disputes having received the call.

> Section 161 of the *Restatement (Second)* sets forth the rule applicable here:
>
> > A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that he is not so authorized.

In this context, a "person has notice of a fact if he knows the fact" or "has reason to know

it," *Restatement (Second) of Agency* § 9, and

> > A person has reason to know of a fact if he has information from which a person of ordinary intelligence, or of superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, if exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence. . . . A person of superior intelligence or training has reason to know a fact if a person with his mental capacity and attainments would draw such an inference from the facts known to him.  On the other hand, "reason to know" imports no duty to ascertain facts not to be deduced as inferences from facts already known; one has reason to know a fact only if a reasonable person in his position would infer such fact from other facts already known to him.

*Id.* at cmt. d.

> Contrary to Terra Nova's suggestion, it is not the law that one having

reason to believe that there are some limits to a general agent's authority is thereby

13

saddled with an absolute duty to determine all undisclosed limits that the principal has imposed. It is sufficient if he acts reasonably in his reliance on the appearance of authority that the principal has created.

The letter bearing Terra Nova's seal stated that Customized's authority was "strictly limited to weather for the perils of rain, snow, and temperature and are subject to the geographical limits of the United States," and that the "[l]imits and terms of the binding authority are those that are contained in our cover note." It is plausible that notice of these facts could have given PXRE cause for concern and the fact that PXRE made further inquiries into Customized's authority may evidence this concern. However, nothing in the record indicates that it was unreasonable, as a matter of law, for PXRE to assume from Terra Nova's conduct that Customized was authorized to issue the policies on behalf of Terra Nova. While Terra Nova advised that there were limits on Customized's authority, a jury could reasonably conclude that nothing was disclosed that would cause a reasonable person in PXRE's position to infer that the liability limits of the policies exceeded Customized's authority.

Terra Nova relies primarily on *Barrett Co. v. Globe Indemnity Co.*, 159 A. 709 (N.J. 1932), for the proposition that, because PXRE had notice that Customized's authority to issue policies was subject to limitations, PXRE had a duty to inquire about the scope of those limitations. The New Jersey Supreme Court there held that "[i]t is well settled . . . that, where one receives notice that he is dealing with a special agent, he is

14

bound to inquire the nature and extent of his authority."  *Id.* at 710.  However, such a duty

is limited to special agents.  As the *Barrett* court explained:

> Those dealing with the agent of the defendant here were
> bound as a matter of law to notice that the purported bond was
> signed by him as "attorney in fact," and a reading of the
> contract and the signature with the words "attorney in fact"
> following it was sufficient to put those dealing with the agent
> and all parties connected with the transaction upon notice that
> they were dealing with a special agent, and, having
> constructive notice that such agent's authority was limited,
> they were no longer justified in acting upon the agent's
> apparent authority.  The American and English Encyclopedia
> of Law (2d Ed.) vol. 3, p. 281, defines an attorney in fact as
> "any private or special agent appointed for some particular or
> definite purpose not connected with a proceeding at law, by
> formal authority, called a letter or power of attorney, in which
> is expressed the particular act or acts for which he is
> appointed and the extent of his authority."  Black's Law
> Dictionary, p. 105, defines an attorney in fact as "a private
> attorney authorized by another to act in his place and stead,
> either for some particular purpose, as to do a particular act, or
> for the transaction of business in general not of a legal
> character.  The authority is conferred by an instrument in
> writing called a 'letter of attorney.'"  It is clear, therefore, that
> the words "attorney in fact" were notice that the agent signed
> as a special agent.

*Barrett*, 159 A. at 710.[1]

"A special agent, as distinguished from a general agent, is one employed for

---

[1]*Barrett* also states in *dicta* that "if a third person dealing with a general agent has actual or constructive notice of a limitation upon the agent's authority he is put upon inquiry as to the scope of the authority."  *Barrett*, 159 A. at 710.  Unlike Terra Nova, we read this *dicta* as a reference to the principles stated in §§ 9 and 161 of the *Restatement (Second), supra.*

a particular purpose only, and if he exceeds his authority the principal is not bound."

*Markowitz v. Berg*, 4 A.2d 410 (N.J. 1939). "A general agent is an agent authorized to conduct a series of transactions involving a continuity of service." *Restatement (Second) of Agency* § 3. "Continuity of service rather than the extent of discretion or responsibility is the hall-mark of a general agent." *Id.* at cmt. a. A general agent "subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that he is not authorized." *Restatement (Second) of Agency* § 161.

At the time of the transaction, the continuity of service between Terra Nova and Customized was lengthy, going back to the beginning of 1995. Customized and Mollin were not employed for a particular purpose only. Indeed, the letter bearing Terra Nova's seal indicates that Customized had authority to bind risks. Accordingly Customized was a general agent of Terra Nova's.

We conclude that the District Court correctly found that PXRE's duty was to act reasonably in relying on the appearance created by Terra Nova and that the jury should consider the knowledge possessed by PXRE in determining the reasonableness of its conduct. Given the evidence, the jury was entitled to conclude, as it did, that the facts known to PXRE would not have caused a reasonable, prudent insurance firm in its position to infer that Customized was not authorized to bind Terra Nova to the policies.

16

V.

The judgment of the District Court will be affirmed.

TO THE CLERK:

Please file the foregoing Not Precedential Opinion.


/s/ Walter K. Stapleton
Circuit Judge

17